

1          UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF ALABAMA
2

3   UNITED STATES OF AMERICA
                                     CASE NO. CR15-00088
4   v.
                                     COURTROOM 2B
5   JOHN PATRICK COUCH, M.D.,
    and XIULU RUAN, M.D.,
6                                    MOBILE, ALABAMA

7          Defendants.
                                     FRIDAY, FEBRUARY 17, 2017
    * * * * * * * * * * * * * *
8   REDACTED

9
                          DAY 28 OF TRIAL
10       BEFORE THE HONORABLE CALLIE V. S. GRANADE,
            UNITED STATES DISTRICT JUDGE, AND JURY
11

12

13   APPEARANCES:

14   FOR THE GOVERNMENT:
        DEBORAH A. GRIFFIN
15       CHRISTOPHER BODNAR
        United States Attorney's Office
16       63 S. Royal Street, Suite 600
        Mobile, AL  36602
17       (251) 441-5845

18
    FOR THE DEFENDANT COUCH:
19       ARTHUR T. POWELL, III
        P.O. Box 40456
20       Mobile, AL 36640-0456
        (251) 433-8310
21
        JACKSON R. SHARMAN, III
22       ROBERT JACKSON SEWELL
        JEFFREY PAUL DOSS
23       BENJAMIN SANDERS WILLSON
        Lightfoot, Franklin & White
24       400 North 20th Street
        Birmingham, AL  35203
25       (205) 581-0700

1  (Continued)

2      BRANDON KEITH ESSIG
       800 Shades Creek Parkway, Suite 600D
3      Birmingham, AL  35209
       (251) 879-1981

4
   FOR THE DEFENDANT RUAN:
5      DENNIS J. KNIZLEY
       7 N. Lawrence
6      Mobile, AL 36602
       (251) 432-3799

7
       JASON BRADLEY DARLEY
8      Darley & McGough, LLC
       1751 Dauphin Street
9      Mobile, AL 36604
       (251) 441-7772

10
       GORDON G. ARMSTRONG, III
11     P.O. Box 1464
       Mobile, AL  36633
12     (251) 434-6428

13     STEVEN D. MARTINIE
       4955 North Lake Drive
14     Whitefish Bay, WI  53217
       (414) 332-9683

15
   THE CLERK:  MARY ANN BOYLES
16 THE LAW CLERK:  LYNN DEKLE
   COURT REPORTER:  ROY ISBELL, CCR, RDR, CRR

17
           Proceedings recorded by OFFICIAL COURT REPORTER
18        Qualified pursuant to 28 U.S.C. 753(a) & Guide to
       Judiciary Policies and Procedures Vol. VI, Chapter III, D.2.
19           Transcript produced by computerized stenotype.

20

21

22

23

24

25

```
 1          (Morning session, 9:10 a.m., in chambers, jury not present.)

 2               THE COURT:  Good morning.

 3               MR. SHARMAN:  Good morning, Judge.

 4               MR. POWELL:  Good morning, Judge.

 5               MS. GRIFFIN:  Good morning.

 6               MR. BODNAR:  Good morning, Judge.

 7               THE COURT:  Good morning.

 8               MR. ARMSTRONG:  Good morning.

 9               THE COURT:  Good morning.

10               MR. KNIZLEY:  Good morning, Judge.

11               THE COURT:  Good morning.  We've got everybody.

12          Okay.  I've decided to let that juror just stay as a

13     regular juror, after the vociferous objections by the defense.

14               Is there something else we need to take up?

15               MR. SHARMAN:  No, ma'am.  I think I noticed a typo on

16     the instructions that were handed out, or a missing point.  I

17     think on page six, I believe Mr. Douthitt should be listed with

18     the folks who have entered into plea agreements.  It starts

19     with Justin Palmer, the paragraph beginning:  Also in this

20     case.

21               THE COURT:  Okay.  Anybody else -- they've already all

22     been printed out, so I'll just have to say his name.

23               MR. SHARMAN:  Yes, ma'am.

24               THE COURT:  What's his first name?

25               MR. BODNAR:  Gary.
```

```
 1              MR. SHARMAN:  Gary.

 2              MR. ARMSTRONG:  Gary.

 3              THE COURT:  That was an unrelated case; right?

 4              MR. SHARMAN:  That's right.  He pled to an unrelated

 5   case.

 6              MR. BODNAR:  It was an unrelated case, Your Honor.

 7              THE COURT:  Okay.  What else?

 8              MR. POWELL:  What is Your Honor's plan for when the

 9   jury breaks to go to lunch?  Do the parties need to be in the

10   courtroom?  Are you going to bring them back in and recess

11   them?

12              THE COURT:  I'll let them decide all that.

13              MR. POWELL:  Okay.

14              THE COURT:  I will only bring them in to recess for

15   the evening, just to instruct them again.

16              MR. POWELL:  Right.

17              THE COURT:  But I'm going to tell them they can set

18   their own schedule, just to let the CSO know what it is so

19   we'll know what it is and go to lunch when they go to lunch.

20              MR. POWELL  So we don't need to plan to be here like

21   at noon and 1:30 unless something happens?

22              THE COURT:  I want one lawyer from everybody here --

23              MR. POWELL:  At all times?

24              THE COURT:  -- at all times.

25              MR. POWELL:  Yes, ma'am.
```

```
 1          THE COURT:  In case they have a question.  So one
 2  lawyer with authority be here.
 3          MR. POWELL:  Yes, ma'am.
 4          MR. BODNAR:  And by "here," do you mean in the
 5  courthouse or courtroom?
 6          THE COURT:  Well, y'all can be up in your office on
 7  the third floor or fourth floor, wherever it is these days.
 8  And y'all can stay back in your --
 9          MR. SHARMAN:  Yes, ma'am.
10          THE COURT:  We need to know where to get you right
11  away.
12          MR. KNIZLEY:  Someone will be here.
13          THE CLERK:  We are missing Ruan Exhibit 29.  Counsel
14  will just replace it.
15          THE COURT:  Regenerate it?
16          MR. ARMSTRONG:  It's out of the discovery, so we know
17  which one it is.  We'll just reproduce it.
18          MR. BODNAR:  No objection from the United States.
19          THE COURT:  All right.  Okay.  Let's call the jury up.
20          Oh, wait.  Wait, wait.  Did y'all want to talk about
21  the tabs on the --
22          MR. SHARMAN:  Your Honor, I may have suggested that if
23  there are exhibits that reflect, you know, essentially lawyers
24  putting tabs on exhibits, it seems to me that was not the
25  intended actual part of the exhibit for the jury and that those
```

1   should be removed.  I realize that there were documents seized

2   that had tabs and Post-It Notes and so forth.  But my only

3   point was if a lawyer has put his or her own Post-It Notes and

4   that's still on an exhibit, those should be removed.

5         THE COURT:  I think the Post-It Notes are all gone.

6   But some of them are tabbed otherwise, aren't they?

7         MR. BODNAR:  They have these little flags just like

8   this, Your Honor (indicating).

9         THE COURT:  But were those --

10         MR. BODNAR:  Those were stuff that were put on by the

11   attorneys to mark their spots.  We have no problem with those

12   being taken off.

13         THE COURT:  There's a lot of those, like those

14   exhibits right there.  (Indicating.)

15         THE CLERK:  Yes, ma'am.

16         MR. SHARMAN:  I hate to put anybody to work, Your

17   Honor.  But, I mean, I think that it's not part of the exhibit.

18   It's --

19         THE CLERK:  I'll be glad to take them out.

20         MR. SHARMAN:  -- the lawyers' work product.

21         THE COURT:  Yeah.  I mean, there's nothing the lawyers

22   have written on these tabs or anything?

23         MR. BODNAR:  On mine there are.

24         MS. GRIFFIN:  On mine there are not.

25         MR. ARMSTRONG:  Some do, some do not.

6320

```
 1            MR. SHARMAN:  And they would tend to naturally point
 2   the reader to a particular part.
 3            THE COURT:  It may have been helpful.  Would you like
 4   to go through all that stuff without some direction?
 5            MR. SHARMAN:  I have, Your Honor, and it was --
 6            THE COURT:  Well, you see what I mean.  All
 7   right.  Well, we'll pull them out.
 8            THE CLERK:  Yes, ma'am.
 9            THE COURT:  Mary Ann, maybe you can go be doing that
10   while I'm reading the instructions to them.
11            THE CLERK:  Okay.
12            THE COURT:  Also, all right, you know Monday is a
13   federal holiday and, of course, the following week is Mardi
14   Gras.  So the courthouse will be closed Monday and Tuesday as
15   well.  I don't get back into town until Thursday, but I will go
16   ahead and let the jury deliberate and we'll have another judge
17   ready to take a verdict.  If there's a question, hopefully I
18   can be available by telephone.  I don't know.
19            I'll be in Iceland.  So -- in February.  That's kind
20   of a stupid move.
21            MR. ARMSTRONG:  Take a coat.
22            THE COURT:  Anyway, so hopefully I will be available
23   if there's a question.  But maybe they will be through by then.
24   Who knows?
25            But these are all things to think about.  And once
```

1  again, I really want y'all to talk about the forfeiture

2  situation and see if you can come to some sort of resolution as

3  to what may happen depending on what the verdicts are.

4          MR. POWELL:  Yes, ma'am.

5          THE COURT:  Okay.  Let's call for the jury.

6      (A recess was taken at approximately 9:19 a.m.)

7      (In open court, defendants and jury present.)

8          THE COURT:  All right.  Good morning, ladies and

9  gentlemen.

10          I am going to be reading you the instructions that you

11  must follow in deciding this case.  And we've got copies for

12  you which I'm going to ask the clerk to pass out.  Once they've

13  all been passed out, you can follow along with me as I read it

14  to you.  You can take your copy with you to the jury

15  deliberation room and use it during the course of your

16  deliberations.  But we find it's a lot easier if you have a

17  copy to follow along while I'm reading them to you.

18          Did we have an extra one there?

19          Oh, you just put yours up on the bar.  That's okay.  I

20  thought maybe we had too many.

21          All right.

22          MR. BODNAR:  Your Honor?  I'm not positive your

23  microphone is on or if it's just very quiet.

24          THE COURT:  It's on, it's on.

25          Members of the jury, it is now my duty to instruct you

6322

1   on the rules of law that you must use in deciding this

2   case.  After I have completed these instructions, you will go

3   to the jury room and begin your discussions -- or what we call

4   your deliberations.

5          It will be your duty to decide whether the government

6   has proved the specific facts necessary to find the defendant

7   guilty beyond a reasonable doubt.

8          Your decision must be based only on the evidence

9   presented during the trial and you must not be influenced in

10  any way by either sympathy for or prejudice against the

11  defendant or the government.

12         You must follow the law as I explain it -- even if you

13  do not agree with the law -- and you must follow all of my

14  instructions as a whole.  You must not single out or disregard

15  any of the Court's instructions on the law.

16         The indictment or formal charge against a defendant is

17  not evidence of guilt.  The law presumes every defendant is

18  innocent.  A defendant does not have to prove his innocence or

19  produce any evidence at all.  The government must prove guilt

20  beyond a reasonable doubt.  If it fails to do so, you must find

21  the defendant not guilty.

22         The government's burden of proof is heavy, but it does

23  not have to prove a defendant's guilt beyond all possible

24  doubt.  The government's proof only has to exclude any

25  reasonable doubt concerning the defendant's guilt.

1      A reasonable doubt is a real doubt, based on your

2  reason and common sense after you have carefully and

3  impartially considered all the evidence in the case.

4      Proof beyond a reasonable doubt is proof so convincing

5  that you would be willing to rely and act on it without

6  hesitation in the most important of your own affairs.  If you

7  are convinced that the defendant has been proved guilty beyond

8  a reasonable doubt, say so.  If you are not convinced, say so.

9      As I said before, you must consider only the evidence

10  that I have admitted in the case.  Evidence includes the

11  testimony of witnesses and the exhibits admitted.  But anything

12  the lawyers say is not evidence and is not binding on you.

13      You should not assume from anything I have said that I

14  have any opinion about the factual issues in this case.  Except

15  for my instructions to you on the law, you should disregard

16  anything I may have said during the trial in arriving at your

17  own decision about the facts.

18      Your own recollection and interpretation of the

19  evidence is what matters.

20      In considering the evidence you may use reasoning and

21  common sense to make deductions and reach conclusions.  You

22  shouldn't be concerned about whether the evidence is direct or

23  circumstantial.

24      Direct evidence is the testimony of a person who

25  asserts that he or she has actual knowledge of a fact, such as

COURT'S ORAL CHARGE

6324

1    an eyewitness.

2           Circumstantial evidence is proof of a chain of facts

3    and circumstances that tend to prove or disprove a fact.  There

4    is no legal difference in the weight you may give to either

5    direct or circumstantial evidence.

6           Now, when I say you must consider all the evidence, I

7    do not mean that you must accept all the evidence as true or

8    accurate.  You should decide whether you believe what each

9    witness had to say and how important that testimony was.  In

10   making that decision you may believe or disbelieve any witness,

11   in whole or in part.  The number of witnesses testifying

12   concerning a particular point doesn't necessarily matter.

13          To decide whether you believe any witness, I suggest

14   that you ask yourself a few questions:  Did the witness impress

15   you as one who was telling the truth?

16          Did the witness have any particular reason not to tell

17   the truth?

18          Did the witness have a personal interest in the

19   outcome of the case?

20          Did the witness seem to have a good memory?

21          Did the witness have the opportunity and ability to

22   accurately observe the things he or she testified about?

23          Did the witness appear to understand the questions

24   clearly and answer them directly?

25          Did the witness' testimony differ from other testimony

1  or evidence?

2        You should also ask yourself whether there was

3  evidence that a witness testified falsely about an important

4  fact.  And ask whether there was evidence that at some other

5  time a witness said or did something, or did not say or do

6  something, that was different from the testimony the witness

7  gave during the trial.

8        But keep in mind that a simple mistake doesn't mean a

9  witness wasn't telling the truth as he or she remembers

10  it.  People naturally tend to forget some things or remember

11  them inaccurately.  So if a witness misstated something, you

12  must decide whether it was because of an innocent lapse in

13  memory or an internal deception.  The significance of your

14  decision may depend on whether the misstatement is about an

15  important fact or about an unimportant detail.

16        To decide whether you believe a witness, you may

17  consider the fact that the witness has been convicted of a

18  felony or a crime involving dishonesty or a false statement.

19        The testimony of some witnesses must be considered

20  with more caution than the testimony of other witnesses.

21        For example, a witness who was using addictive drugs

22  during the time the witness testified about may have an

23  impaired memory concerning the events that occurred during that

24  time.  While a witness of that kind may be entirely truthful

25  when testifying, you should consider that testimony with more

1    caution than the testimony of other witnesses.

2          Also in this case the government called as witnesses

3    Justin Palmer, Bridgette Parker, Natalie Perhacs, and

4    Christopher Manfuso -- and I left out a name here; there's also

5    Gary Douthitt that should be in this group -- and Gary

6    Douthitt, who have entered into plea agreements with the

7    government that provide for the possibility of a lesser

8    sentence than the witnesses would otherwise be exposed

9    to.  Such plea bargaining, as it is called, has been approved

10   as lawful and proper and is expressly provided for in the rules

11   of this Court.  However, a witness who hopes to gain more

12   favorable treatment may have a reason to make a false statement

13   in order to strike a good bargain with the government.  So,

14   while a witness of that kind may be entirely truthful when

15   testifying, you should consider such testimony with more

16   caution than the testimony of other witnesses.

17         And, of course, the fact that a witness pleaded guilty

18   to the same crime a defendant is charged with is not evidence

19   in and of itself of the guilt of any other person.

20         You have heard testimony of law enforcement officers

21   and agents.  Such testimony is to be subjected to the same

22   tests and given the same consideration as that of any other

23   witness.  No more and no less weight is to be given their

24   testimony simply because of their official capacity with the

25   government.  Everyone, law enforcement and lay witnesses alike,

1 are judged and treated the same way.

2      When scientific, technical, or other specialized
3 knowledge might be helpful, a person who has special training
4 or experience in that field is allowed to state an opinion
5 about that matter.

6      But that does not mean that you must accept the
7 witness' opinion.  As with any other witness' testimony, you
8 must decide for yourself whether to rely upon the opinion.

9      You have heard from many medical experts during the
10 trial.  However, expert medical testimony is not essential to
11 your consideration of this case, because a jury may find that a
12 doctor violated the Controlled Substances Act from evidence
13 received from lay witnesses surrounding the facts and
14 circumstances of the prescriptions.  Experts can reasonably
15 disagree with each other regarding whether a prescription was
16 written within or outside the usual course of professional
17 practice.  However, their disagreement does not mean you cannot
18 use other evidence or testimony you heard during the trial to
19 form your own opinion on whether a prescription was written
20 within or outside the usual course of professional practice.

21      A defendant has a right not to testify.  But since
22 each defendant did testify, you should decide whether you
23 believe each defendant's testimony in the same way as that of
24 any other witness.

25      Now, at this time I will explain the indictment, which

1  charges separate offenses called counts.  Each count has a

2  number.  I will not read them to you, because you will be given

3  a copy of the indictment to refer to during your deliberations.

4  Although the indictment may refer to various aspects of the

5  law, you are to consider only the law as I give it to you in

6  these instructions in deciding the case.

7          Both defendants are not charged in each count.  I will

8  now explain the law governing each count.

9          Count one charges that the defendants conspired to

10  violate the Racketeer Influenced and Corrupt Organizations Act,

11  or RICO, in violation of Title 18, United States Code, Section

12  1962(d), that statute makes it a federal offense for anyone

13  associated with an enterprise whose activities involve or

14  affect interstate commerce to participate in conducting the

15  activities of the enterprise through a pattern of racketeering

16  activity.

17          An enterprise includes legal entities such as any

18  partnership, corporation, or association.  It also includes a

19  nonlegal entity that is a group of people associated for a

20  common purpose of engaging in a course of conduct.

21          Racketeering activity includes any acts that violate

22  the Controlled Substances Act, as well as acts that constitute

23  mail fraud or wire fraud.  I will give you specific

24  instructions as to the elements that must be proved to

25  establish a violation of the Controlled Substances Act and to

 1   prove mail and wire fraud later in these instructions.

 2          A pattern of racketeering activity means that at least

 3   two acts of racketeering activity were committed within 10

 4   years.

 5          A conspiracy is an agreement by two or more persons to

 6   commit an unlawful act.  In other words, it's kind of a

 7   partnership for criminal purposes.  Every member of the

 8   conspiracy becomes the agent or partner of every other member.

 9          The government does not have to prove that all the

10   people named in the indictment were members of the plan or that

11   those who were members made any kind of formal agreement.  The

12   heart of a conspiracy is the making of the unlawful plan

13   itself.  So the government does not have to prove that the

14   conspirators succeeded in carrying out the plan.

15          Specifically, count one of the indictment alleges

16   Defendants Couch and Ruan were associated with two entities:

17   Physicians Pain Specialists of Alabama P.C. (or PPSA) and C&R

18   Pharmacy.  Count one charges that beginning at least in or

19   about 2011 and continuing through or about May 20, 2015,

20   Defendants Couch and Ruan, together with these entities and

21   other individuals, constituted an enterprise through which the

22   defendants did knowingly conspire to engage in a pattern of

23   racketeering activity in violation of Title 18, United States

24   Code, Section 1962(d).

25          Each of the defendants can be found guilty of

1    violating section 1962(d) only if all of the following facts

2    are proved beyond a reasonable doubt: First, two or more

3    people agreed to try and accomplish an unlawful plan to engage

4    in a pattern of racketeering activity; second, the defendant

5    knowingly and willfully joined in the conspiracy; and, third,

6    when the defendant joined in the agreement, the defendant had

7    the specific intent either to personally participate in

8    committing at least two other acts of racketeering (which in

9    this case would be acts violating the Controlled Substances Act

10    as described herein, acts constituting mail fraud, or acts

11    constituting wire fraud), or else to participate in the

12    enterprise's affairs, knowing that other members of the

13    conspiracy would commit at least two other acts of racketeering

14    and intending to help them as part of a pattern of racketeering

15    activity.

16         A person may be a conspirator even without knowing all

17    the details of the unlawful plan or the names and identities of

18    all the other alleged conspirators.

19         If the defendant played only a minor part in the plan

20    but had a general understanding of the unlawful purpose of the

21    plan -- and willfully joined in the plan on at least one

22    occasion -- that's sufficient for you to find the defendant

23    guilty.

24         But simply being present at the scene of an event or

25    merely associating with certain people and discussing common

1  goals and interests does not establish proof of a

2  conspiracy.  Also a person who doesn't know about a conspiracy

3  but happens to act in a way that advances some purpose of one

4  doesn't automatically become a conspirator.

5       Counts two, three, and four of the indictment each

6  allege that the defendants conspired with each other and with

7  others to violate the Controlled Substances Act, Title 21,

8  United States Code, Section 846.

9       That statute makes it a separate federal crime or

10  offense for anyone to conspire or agree with someone else to do

11  something which, if actually carried out, would be a violation

12  of section 841(a)(1).  That section makes it a crime for anyone

13  to knowingly or intentionally distribute or dispense a

14  controlled substance, unless it was prescribed by a

15  practitioner within the usual course of professional practice

16  and for a legitimate medical purpose.

17       Specifically, count two of the indictment charges that

18  beginning during or at least in 2011 and continuing through May

19  20, 2015, Defendants Couch and Ruan conspired to knowingly and

20  unlawfully distribute and dispense, possess with intent to

21  distribute and dispense, and cause to be distributed and

22  dispensed schedule II controlled substances, including

23  oxycodone, oxymorphone, hydromorphone, and morphine, by means

24  of prescriptions and other methods outside the usual course of

25  professional medical practice and not for a legitimate medical

1  purpose, in violation of Title 21, United States Code, Section

2  841(a)(1).

3          Count three charges that beginning during and at least

4  in 2011 and continuing through May 20, 2015, Defendants Couch

5  and Ruan conspired to knowingly and unlawfully distribute and

6  dispense, possess with intent to distribute and dispense, and

7  cause to be distributed and dispensed more than 40 grams of the

8  schedule II controlled substance fentanyl outside the usual

9  course of professional medical practice and not for a

10  legitimate medical purpose, in violation of Title 21, United

11  States Code, Section 841(a)(1).

12          Count four charges that beginning during or at least

13  in 2011 and continuing through May 20, 2015, Defendants Couch

14  and Ruan conspired to knowingly and unlawfully distribute and

15  dispense, possess with intent to distribute and dispense, and

16  cause to be distributed and dispensed schedule III controlled

17  substances, including hydrocodone, by means of prescriptions

18  and other methods outside the usual course of professional

19  medical practice and not for a legitimate medical purpose, in

20  violation of Title 21, United States Code, Section 841(a)(1).

21          Title 21, United States Code, Section 841(a)(1) makes

22  it a crime for a physician to knowingly or intentionally

23  distribute or dispense a controlled substance unless it was

24  done within the usual course of professional practice and for a

25  legitimate medical purpose.  Dispense can mean to prescribe a

controlled substance.  Distribute can mean to deliver other than by dispensing a controlled substance.

For a controlled substance to be lawfully dispensed by a prescription, the prescription must have been issued by a practitioner both within the usual course of professional practice and for a legitimate medical purpose.  If the prescription was issued either, one, not for a legitimate medical purpose or, two, outside the usual course of professional practice, then the prescription was not lawfully issued.

A controlled substance is prescribed by a physician in the usual course of a professional practice and, therefore, lawfully if the substance is prescribed by him in good faith as part of his medical treatment of a patient in accordance with the standard of medical practice generally recognized and accepted in the United States.  The defendants in this case maintain at all times they acted in good faith and in accordance with standard of medical practice generally recognized and accepted in the United States in treating patients.

Thus a medical doctor has violated section 841 when the government has proved beyond a reasonable doubt that the doctor's actions were either not for a legitimate medical purpose or were outside the usual course of professional medical practice.

COURT'S ORAL CHARGE

1          A conspiracy is an agreement by two or more persons to
2    commit an unlawful act.  In other words, it is a kind of
3    partnership for criminal purposes.  Every member of the
4    conspiracy becomes the agent or partner of every other member.
5          The government does not have to prove that all the
6    people named in the conspiracy counts were members of the plan
7    or that those who were members made any kind of formal
8    agreement.  The heart of a conspiracy is the making of the
9    unlawful plan itself, so the government does not have to prove
10   that the conspirators succeeded in carrying out the plan.
11         A person may be a conspirator even without knowing all
12   the details of the unlawful plan or the names and identities of
13   all the other alleged coconspirators.
14         If the defendant played only a minor part in the plan
15   but had a general understanding of the unlawful purpose of the
16   plan and willfully joined in the plan on at least one occasion,
17   that's sufficient for you to find the defendant guilty.
18         But simply being present at the scene of an event or
19   merely associating with certain people and discussing common
20   goals and interests does not establish proof of a
21   conspiracy.  Also a person who doesn't know about a conspiracy
22   but happens to act in a way that advances some purpose of one
23   doesn't automatically become a conspirator.
24         Each defendant can be found guilty of the conspiracy
25   alleged in one or more of counts two, three, and four only if

1    all of the following facts are proved beyond a reasonable doubt

2    as to the count in question:  One, two or more people in some

3    way agreed to try and accomplish a shared and unlawful plan to

4    distribute or dispense outside the usual course of professional

5    practice and not for a legitimate medical purpose the alleged

6    controlled substance or substances; and, two, the defendant

7    knew the unlawful purpose of the plan and willfully joined in

8    it.

9         Now, as you heard during the course of the trial, the

10   schedule II and III controlled substances alleged to have been

11   prescribed either not for a legitimate medical purpose or

12   outside the usual course of professional practice are sold

13   under a variety of brand names, including -- and then there's a

14   chart in your instructions.

15        The first substance is fentanyl.  The brand names are

16   Subsys, Abstral, Fentora, Lazanda, and Duragesic, and it is in

17   schedule II.

18        The second is oxymorphone, under the brand name Opana.

19   It is schedule II.

20        The third is hydromorphone.  Brand names, Exalgo and

21   Dilaudid, schedule II.

22        The fourth is oxycodone.  Brand names, OxyContin,

23   Roxicodone, Percocet, and Endocet.  It is schedule II.

24        Morphine.  Brand names, MS Contin, Kadian, Embeda,

25   Avinza.  It is schedule II.

COURT'S ORAL CHARGE

1    And lastly, hydrocodone.  Brand names are Lortab,

2  Norco, Vicodin, and Zohydro.  It is schedule II or III, and

3  that is because hydrocodone was reclassified as a schedule II

4  controlled substance on October 6, 2014.  Prior to that date,

5  hydrocodone was a schedule III controlled substance.

6    For purposes of this case, I instruct you that all of

7  these substances are controlled substances.

8    With regard to count three only, the defendants are

9  charged with dispensing more than 40 grams of fentanyl outside

10  the usual course of professional practice and not for a

11  legitimate medical purpose.  You may find one or both of the

12  defendants guilty of that crime even if the amount of fentanyl

13  for which he or they should be held responsible is less than

14  the amount alleged.  If you find any defendant guilty as to

15  count three, you must also unanimously agree on whether the

16  weight of the fentanyl involved in this offense exceeds 40

17  grams.

18    Counts five through 14 charge Defendants Couch and

19  Ruan with substantive violations of Title 21, United States

20  Code, Section 841(a)(1) which, as I said earlier, makes it a

21  federal crime for anyone to knowingly and unlawfully distribute

22  or dispense or possess with intent to distribute or dispense a

23  controlled substance unless it was prescribed by a practitioner

24  within the usual course of professional practice and for a

25  legitimate medical purpose.

1          Counts five and six each charge that on or about
2    August 5 and September 8, 2014, Defendant Couch knowingly and
3    unlawfully distributed and dispensed 90 pills of Roxicodone 15
4    milligrams to an undercover DEA task force officer for no
5    legitimate medical purpose and outside the usual course of
6    professional practice.  Additionally, count seven charges that
7    on November 3rd, 2014, Defendant Couch knowingly and unlawfully
8    distributed and dispensed 110 pills of Roxicodone 15 milligrams
9    to the same person for no legitimate medical purpose and
10   outside the usual course of professional practice.
11         Count eight charges that on or about February 26,
12   2015, Defendant Ruan knowingly and unlawfully distributed and
13   dispensed specified amounts of Abstral, Subsys, OxyContin, and
14   Norco to DG.............. (or, as stated in the indictment, a
15   patient with the initials DG)  for no legitimate medical
16   purpose and outside the usual course of professional practice.
17         Count nine charges that on or about April 27, 2015,
18   Defendant Ruan knowingly and unlawfully distributed and
19   dispensed specified amounts of Fentora, OxyContin, and
20   oxycodone to KL........... (or, as stated in the indictment, a
21   patient with the initials KL) for no legitimate medical
22   purpose and outside the usual course of professional practice.
23         Count 10 charges that on or about July 15, 2014,
24   Defendant Ruan knowingly and unlawfully distributed and
25   dispensed specified amounts of Fentora and Zohydro ER to Erick

Gist (or, as stated in the indictment, a patient with the initials E.G.) for no legitimate medical purpose and outside the usual course of professional practice.

Count 11 charges that on or about November 25, 2014, Defendant Ruan knowingly and unlawfully distributed oxymorphone under the brand name of Opana to Deborah Walker (or, as stated in the indictment, a patient with the initials D.W.) for no legitimate medical purpose and outside the usual course of professional practice.

Count 12 charges that on or about October 10, 2012, Defendant Ruan knowingly and unlawfully distributed morphine sulfate under the brand name MS Contin to John Bosarge (or, as stated in the indictment, a patient with the initials J.B.) for no legitimate medical purpose and outside the usual course of professional practice.

Count 13 charges that on or about March 5 and March 11, 2015, Defendant Couch knowingly and unlawfully distributed oxycodone hydrochloride under the brand name Roxicodone and oxycodone under the brand name OxyContin to Karen Daw (or, as stated in the indictment, a patient with the initials K.D.) for no legitimate medical purpose and outside the usual course of professional practice.

Count 14 charges that on or about March 18 and March 31, 2014, Defendant Couch knowingly and unlawfully distributed oxymorphone and Morphine Sulfate Instant Release to Patrick

COURT'S ORAL CHARGE                                                    6339

1    Chausse (or, as stated in the indictment, a patient with the

2    initials P.C.) for no legitimate medical purpose and outside

3    the usual course of professional practice.

4           The defendant can be found guilty of each offense only

5    if all of the following facts are proved beyond a reasonable

6    doubt as to that offense:  One, on or about the date charged,

7    the defendant dispensed by prescription the identified

8    controlled substance to the identified individual; two, the

9    defendant did so knowingly and intentionally; and, three, the

10   defendant did not have a legitimate medical purpose to do so or

11   did not do so in the usual course of professional practice.

12          As I stated previously, for a controlled substance to

13   be lawfully dispensed by a prescription, the prescription must

14   have been issued by a practitioner both within the usual course

15   of professional practice and for a legitimate medical

16   purpose.  If the prescription was issued either, one, not for a

17   legitimate medical purpose or, two, outside the usual course of

18   professional practice, then the prescription was not lawfully

19   issued.

20          A controlled substance is prescribed by a physician in

21   the usual course of professional practice and therefore

22   lawfully if the substance is prescribed by him in good faith as

23   part of his medical treatment of a patient in accordance with

24   the standard of medical practice generally recognized and

25   accepted in the United States.  The defendants in this case

COURT'S ORAL CHARGE                                                          6340

1    maintain at all times they acted in good faith and in

2    accordance with standard of medical practice generally

3    recognized and accepted in the United States in treating

4    patients.

5           Thus, a medical doctor has violated section 841 when

6    the government has proved beyond a reasonable doubt that the

7    doctor's actions were either not for a legitimate medical

8    purpose or were outside the usual course of professional

9    practice.

10          In count 15 the defendants are charged with violating

11   Title 18, United States Code, Section 1349, which makes it a

12   federal crime to knowingly and willfully conspire or agree with

13   someone to do something that, if actually carried out, would

14   result in the crime of healthcare fraud, a violation of Title

15   18, United States Code, Section 1347.

16          Specifically, count 15 charges that beginning at least

17   in 2011 and continuing through May 20, 2015, Defendants Couch

18   and Ruan knowingly and willfully conspired to execute and

19   attempt to execute a scheme and artifice to defraud a

20   healthcare benefits program in violation of Title 18, United

21   States Code, Section 1347(a).

22          In order to prove the substantive crime of healthcare

23   fraud, the government would have to prove all of the following

24   facts beyond a reasonable doubt:  One, the defendant knowingly

25   executed or attempted to execute a scheme or artifice to

1   defraud a healthcare benefit program by means of false or

2   fraudulent pretenses, representations, or promises; two, the

3   healthcare benefit program affected interstate commerce; three,

4   the false or fraudulent pretenses, representations, or promises

5   related to a material fact; four, the defendant acted willfully

6   and intended to defraud; and five, the defendant did so in

7   connection with the delivery of or payment for healthcare

8   benefits, items, or services.

9          Healthcare benefit program means any public or private

10  plan or contract affecting commerce under which any medical

11  benefit, item, or service is provided to any individual and

12  includes any individual who is providing a medical benefit,

13  item, or service for which payment may be made under the plan

14  or contract.

15         A healthcare program affects interstate commerce if

16  the healthcare program had any impact on the movement of any

17  money, goods, services, or persons from one state to

18  another.  The government need only prove that the healthcare

19  program itself either engaged in interstate commerce or that

20  its activity affected interstate commerce to any degree.  The

21  government need not prove that a defendant engaged in

22  interstate commerce or that the acts of a defendant affected

23  interstate commerce.

24         A scheme to defraud includes any plan or course of

25  action intended to deceive or cheat someone out of money or

1   property by using false or fraudulent pretenses,

2   representations, or promises relating to a material fact.

3          A statement or representation is false or fraudulent

4   if it is about a material fact that the speaker knows is untrue

5   or makes with reckless indifference as to the truth and makes

6   with intent to defraud.  A statement or representation may be

7   false or fraudulent when it is a half-truth or effectively

8   concealed a material fact and is made with an intent to

9   defraud.

10          A material fact is an important fact that a reasonable

11  person would use to decide whether or not to do something.  A

12  fact is material if it has the capacity or natural tendency to

13  influence a person's decision.  It does not matter whether the

14  decision maker actually relied on the statement or knew or

15  should have known that the statement was false.

16          To act with intent to defraud means to do something

17  with the specific intent to deceive or cheat someone, usually

18  for personal financial gain or to cause financial loss to

19  someone else.

20          Good faith is a complete defense to a charge that

21  requires intent to defraud.  A defendant is not required to

22  prove good faith.  The government must prove intent to defraud

23  and willfulness beyond a reasonable doubt.  An honestly held

24  opinion or an honestly formed belief cannot be fraudulent

25  intent -- even if the opinion or belief is mistaken.

1    Similarly, evidence of a mistake in judgment, an error in

2    management, or carelessness cannot establish fraudulent

3    intent.  In order to convict a defendant of an offense

4    requiring intent to defraud, the government must prove that the

5    defendant intended to deceive by making or causing to be made

6    representations the defendant knew to be false or fraudulent.

7         The government does not have to prove all the details

8    in the indictment about the precise nature and purpose of the

9    scheme.  It also does not have to prove that the alleged scheme

10   actually succeeded in defrauding anyone.  What must be proved

11   beyond a reasonable doubt is that the defendant knowingly

12   attempted or carried out a scheme substantially similar to the

13   one alleged in the indictment.

14        You will note that the defendants are not charged with

15   substantive healthcare fraud, but rather with conspiracy to

16   commit healthcare fraud.  Now, I have given you the elements

17   required to prove substantive healthcare fraud to help explain

18   what the defendants are charged with conspiring to commit.

19        Each defendant can be found guilty of this conspiracy

20   offense only if all of the following facts are proved beyond a

21   reasonable doubt:  One, two or more persons in some way or

22   manner agreed to try to accomplish a common and unlawful plan

23   to commit healthcare fraud; and, two, the defendant knew the

24   unlawful purpose of the plan and willfully joined in it.

25        My previous instructions to you about conspiracy,

 1    found at pages 15 and 16 above, also apply to these conspiracy

 2    charges.

 3            Also as to count 15, the indictment identifies four

 4    means by which the defendants allegedly conspired to commit

 5    healthcare fraud.  You may find a defendant guilty of this

 6    conspiracy if you conclude beyond a reasonable doubt that a

 7    defendant conspired to commit healthcare fraud by one or more

 8    of these four means, provided that you unanimously agree on

 9    which ones.

10            The government does not have to prove all four.  But

11    in order to convict on count 15, you have to agree unanimously

12    on which one or more of the four ways the government proved

13    beyond a reasonable doubt.

14            Counts 16 and 17 charge Defendants Couch and Ruan with

15    violating Title 21, United States Code, Section 371, which

16    makes it a federal crime for anyone to conspire or agree with

17    someone else to do something that, if actually carried out,

18    would result in the substantive violation of the anti-kickback

19    statute.

20            Specifically, the government alleges in count 16 that

21    from in or about March 5, 2011, and continuing through in or

22    about May 20, 2015, Defendants Couch and Ruan knowingly

23    conspired with each other, with Michael Drobot (identified in

24    the indictment by the initials M.D.), and with Christopher

25    Manfuso and others to violate the anti-kickback statute, in

1    violation of Title 42, United States Code, Section 1320a-7b(b).

2           The government alleges in count 17 that from in or

3    about August 2012 and continuing through in or about May 20,

4    2015, Defendants Couch and Ruan knowingly conspired with each

5    other, with Natalie Perhacs, and others to violate the anti-

6    kickback statute in violation of Title 42, United States Code,

7    section 1320a-7b(b).

8           In order to prove a substantive violation of the anti-

9    kickback statute, the government would have to prove all of the

10   following facts beyond a reasonable doubt:  One, the defendant

11   knowingly and willfully offered, paid, solicited, or received

12   any type of remuneration; second, the remuneration was offered,

13   paid, solicited, or received at least in part to induce or in

14   exchange for the referral of a patient item or service; and,

15   three, the patient item or service was covered in whole or in

16   part by a federal healthcare program.

17          The term "remuneration" means anything of value in

18   whatever form and includes any kickback, bribe, or rebate.  It

19   does not matter right if this remuneration is paid directly or

20   indirectly, overtly or covertly, or in cash or in kind.

21          The defendants are not charged in counts 16 and 17

22   with a substantive violation of the anti-kickback statute, but

23   rather with conspiracy to violate the anti-kickback statute.

24          I have given you the elements required to prove the

25   substantive violations to help explain what the defendants are

1    charged with conspiring to commit.

2            Each defendant can be found guilty of the conspiracy

3    charges if all the following facts are proved beyond a

4    reasonable doubt as to each of the counts:  One, two or more

5    people in some way agreed to try and accomplish a shared and

6    unlawful plan; second, the defendant knew the unlawful purpose

7    of the plan and willfully joined in it; third, during the

8    conspiracy one of the conspirators knowingly engaged in at

9    least one overt act described in the indictment; and, four, the

10   overt act was knowingly committed at or about the time alleged

11   and with the purpose of carrying out or accomplishing some

12   object of the conspiracy.

13           An overt act is any transaction or event, even one

14   that may be entirely innocent when viewed alone, that a

15   conspirator commits to accomplish some object of the

16   conspiracy.

17           My previous instructions to you about conspiracy found

18   at pages 15 and 16 above also apply to these conspiracy

19   charges.

20           Now, there is no count 18.

21           In count 19 the defendants are charged with conspiring

22   to commit mail or wire fraud, a violation of Title 18, United

23   States Code, Section 1349.

24           Specifically, count 19 charges that from on or about

25   January 1, 2011, through in or about May 20, 2015, Defendants

1    Couch and Ruan knowingly conspired with each other and others,

2    including Natalie Perhacs, Justin Thomas Palmer, and Bridgette

3    Parker, to execute and attempt to execute a scheme and artifice

4    to defraud and for obtaining money and property by means of

5    false and fraudulent pretenses, representations, and promises;

6    that is, to commit wire fraud, in violation of Title 18, United

7    States Code, Section 1343; and mail fraud in violation of Title

8    18, United States Code, Section 1341.

9           For a substantive violation of mail fraud, the

10   government would have to prove the following facts beyond a

11   reasonable doubt:  One, the defendant knowingly devised or

12   participated in a scheme to defraud someone, or obtain money or

13   property, using false or fraudulent pretenses, representations,

14   or promises; second, the false or fraudulent pretenses,

15   representations, or promises were about a material fact; third,

16   the defendant intended to defraud someone; and, fourth, the

17   defendant used the United States Postal Service by mailing or

18   causing to be mailed, or used a private or commercial

19   interstate carrier by depositing or causing to be deposited

20   with the carrier something meant to help carry out the scheme

21   to defraud.

22          For a substantive violation of wire fraud, the

23   government would have to prove the following facts beyond a

24   reasonable doubt:  One, the defendant knowingly devised or

25   participated in a scheme to defraud or to obtain money or

1  property by using false pretenses, representations, or

2  promises; second, the false pretenses, representations, or

3  promises were about a material fact; third, the defendant acted

4  with the intent to defraud; and, fourth, the defendant

5  transmitted or caused to be transmitted in [sic] wire some

6  communication in interstate commerce to help carry out the

7  scheme to defraud.  That should be by wire, not in wire.  I

8  mean I said it wrong.  Let's put it that way.

9          The defendants are not charged in count 19 with

10  committing substantive mail and wire fraud, but rather with

11  conspiracy to commit mail and wire fraud.  I have given you the

12  elements required to prove the substantive violations to help

13  explain what the defendants are charged with conspiring to

14  commit.

15          Each defendant can be found guilty of this conspiracy

16  offense only if all of the following facts are proved beyond a

17  reasonable doubt:  One, two or more persons in some way or

18  manner agreed to try and accomplish a common and unlawful plan

19  to commit mail or wire fraud, as charged in the indictment;

20  and, two, the defendant knew the unlawful purpose of the plan

21  and willfully joined in it.

22          The instructions I gave you earlier at pages 25 and 26

23  about the terms "scheme to defraud," "false or fraudulent

24  statements or representations," "material fact," "intent to

25  defraud," and "good faith" apply here.  In addition, my earlier

6349

1  instructions to you found at pages 15 and 16 about "conspiracy"
2  also apply here.
3         The indictment charges that the defendants conspired
4  to commit both mail and wire fraud.  In other words, the
5  defendants are charged with conspiring to commit two separate
6  substantive offenses.  The government does not have to prove
7  that the defendant willfully conspired to commit both
8  crimes.  It is sufficient if the government proves beyond a
9  reasonable doubt that the defendant willfully conspired to
10 commit one or both of those crimes.  But to return a verdict of
11 guilty, you must all unanimously agree on which crime or crimes
12 the defendant conspired to commit.
13        Count 20 charges Defendant Ruan with violating Title
14 18, United States Code, Section 1956(h), which makes it a
15 federal crime to conspire to engage in money laundering or
16 transactions involving the proceeds of specified unlawful
17 activity that violate Title 18, United States Code, Section
18 1957.
19        Specifically, count 20 charges that on or about March
20 5, 2011, Through in or about May 20, 2015, Defendant Ruan,
21 aided and abetted by Christopher Manfuso and others, knowingly
22 conspired with others to engage in monetary transactions by,
23 through, and to a financial institution affecting interstate
24 and foreign commerce, in criminally derived property of a value
25 greater than $10,000.  Such property is alleged to have been

6350

1   derived from the defendants' conspiracy to commit healthcare

2   fraud, conspiracy to violate the anti-kickback statute, and

3   conspiracy to distribute controlled substances.

4          The defendant can be found guilty of this crime only

5   if all of the following facts are proved beyond a reasonable

6   doubt:  One, two or more people agreed to try to accomplish a

7   common and unlawful plan to violate Title 18, United States

8   Code, Section 1957; and, two, the defendant knew about the

9   plan's unlawful purpose and voluntarily joined in it.

10          Again, my previous instructions to you about

11   conspiracies also apply to this conspiracy charge.

12          Counts 21 and 22 charge Defendant Ruan with violating

13   Title 18, United States Code, Section 1957, which makes it a

14   federal crime for anyone to engage in certain kinds of

15   financial transactions commonly known as money laundering.

16          Specifically, count 21 charges that on or about August

17   14, 2014, Defendant Ruan knowingly engaged and attempted to

18   engage in a wire transfer in the amount of $124,355.87 from a

19   State Bank & Trust account in the name of XLR Exotic Autos,

20   LLC, to a JPMorgan Chase Bank account in Dallas, Texas, such

21   funds having been derived from defendants' conspiracies to

22   commit healthcare fraud, to violate the anti-kickback statute,

23   and to distribute controlled substances.

24          Count 22 charges that on or about August 26, 2014,

25   Defendant Ruan knowingly engaged and attempted to engage in a

COURT'S ORAL CHARGE

6351

wire transfer in the amount of $110,000 from a State Bank & Trust account in the name of XLR Exotic Autos, LLC, to a Comerica Bank account in San Diego, California, such funds having been derived from Defendants' conspiracies to commit healthcare fraud, to violate the anti-kickback statute, and to distribute controlled substances.

Excuse me.

The defendant can be found guilty of these offenses only if all of the following are proved beyond a reasonable doubt:  One, the defendant knowingly engaged or attempted to engage in a monetary transaction; two, the defendant knew the transaction involved property or funds that were proceeds of some criminal activity; three, the property had a value of more than $10,000; four, the property was in fact proceeds of the alleged unlawful activity alleged in the indictment; specifically, conspiracy to violate the Controlled Substances Act, conspiracy to commit healthcare fraud, and conspiracy to violate the anti-kickback statute; and, five, the defendant -- excuse me -- the transaction took place in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange of funds or a monetary instrument by, through, or to a financial institution in a way that affects interstate commerce.

A financial institution means a bank.

The term "proceeds" means any property derived from or

1  obtained or retained directly or indirectly through some form

2  of unlawful activity, including the gross receipts of the

3  activity.

4          It doesn't matter whether the defendant knew the

5  precise nature of the crime or that the property came from

6  conspiring to commit healthcare fraud or violate the Controlled

7  Substances Act or anti-kickback statute.  But the government

8  must prove that the defendant knew that the property involved

9  in the monetary transaction was obtained or derived from

10  committing some crime.

11          Also it doesn't matter whether all the property

12  involved was derived from a crime.  The government only has to

13  prove that $10,000 worth of the property was obtained or

14  derived from committing a crime.

15          Now, the guilt of a defendant in a criminal case may

16  be proved without evidence that the defendant personally did

17  every act involved in the commission of the crime charged.  The

18  law recognizes that ordinarily anything a person can do for

19  one's self may also be accomplished through direction of

20  another person as an agent, or by acting together with, or

21  under the direction of, another person or persons in a joint

22  effort.

23          So if the acts or conduct of an agent, employee, or

24  other associate of the defendant are willfully directed or

25  authorized by the defendant, or if the defendant aids and abets

COURT'S ORAL CHARGE

6353

another person by willfully joining together with that person
in the commission of a crime, then the law holds the defendant
responsible for the conduct of that other person just as though
the defendant had personally engaged in such conduct.

However, before any defendant can be held criminally
responsible for the conduct of others, it is necessary that the
defendant willfully associate in some way with the crime and
willfully participate in it.  Mere presence at the scene of a
crime or even knowledge that a crime is being committed are not
sufficient to establish that a defendant either directed or
aided and abetted the crime.  You must find beyond a reasonable
doubt that the defendant was a willful participate and not
merely a knowing spectator.

Now, you will note that the indictment charges that
the offenses were committed on or about a certain date.  The
government does not have to prove that a crime occurred on an
exact date.  The government only has to prove beyond a
reasonable doubt that the crime was committed on a date
reasonably close to the date alleged.

The word "knowingly" means that an act was done
voluntarily and intentionally and not because of a mistake or
by accident.

The word "willfully" means that the act was committed
voluntarily and purposely, with the intent to do something the
law forbids; that is, with the bad purpose to disobey or

COURT'S ORAL CHARGE

1    disregard the law.  While a person must have acted with the

2    intent to do something the law forbids, before you can find

3    that the person acted willfully, the person need not be aware

4    of the specific law or rule that his conduct may be violating.

5         Each count of the indictment charges a separate crime

6    against one or both of the defendants.  You must consider each

7    crime and the evidence relating to it separately.  And you must

8    consider the case of each defendant separately and

9    individually.  If you find a defendant guilty of one crime,

10   that must not affect your verdict for any other crime or other

11   defendant.

12        I caution you that each defendant is only on trial for

13   the specific crimes charged in the indictment.  You are here to

14   determine from the evidence in this case whether each defendant

15   is guilty or not guilty of those specific crimes.

16        Also you must never consider punishment in any way to

17   decide whether a defendant is guilty.  If you find a defendant

18   guilty, the punishment is for the judge alone to decide later.

19        In this case you've been permitted to take notes

20   during the course of the trial and many of you have taken

21   advantage of that opportunity and have made notes from time to

22   time.

23        You will have your notes available to you during your

24   deliberations, but you should make use of them only as an aid

25   to your memory.  In other words, you should not give your notes

6355

COURT'S ORAL CHARGE

1   any precedence over your independent recollection of the

2   evidence or the lack of evidence; and neither should you be

3   unduly influenced by the notes of other jurors.

4           I emphasize that notes are not entitled to any greater

5   weight than the memory or impression of each juror as to what

6   the testimony may have been.

7           During your deliberations you must not communicate

8   with or provide any information to anyone by any means about

9   this case.  You may not use any electronic device or media such

10  as telephone, cell phone, smart phone, iPhone, tablet or

11  computer, the internet, any internet service, or any text or

12  instant messaging service, or any internet chat room, blog, or

13  website such as Facebook, Google, Snapchat, LinkedIn, Youtube,

14  Twitter, or Instagram to communicate to anyone any information

15  about this case or to conduct any research about this case

16  until I accept your verdict.

17          Your verdict, whether guilty or not guilty, must be

18  unanimous.  In other words, you must all agree.  Your

19  deliberations are secret, and you will never have to explain

20  your verdict to anyone.

21          Each of you must decide the case for yourself, but

22  only after fully considering the evidence with the other

23  jurors.  So you must discuss the case with one another and try

24  to reach an agreement.  While you are discussing the case, do

25  not hesitate to reexamine your own opinion and change your mind

6356

1    if you become convinced that you were wrong.  But do not give

2    up your honest beliefs just because others think differently or

3    because you simply want to get the case over with.

4            Remember that in a very real way you are judges --

5    judges of the facts.  Your only interest is to seek the truth

6    from the evidence in this occasion.

7            When you get to the jury room, you will choose one of

8    your members to act as your foreperson.  The foreperson will

9    direct your deliberations and will speak for you in court.

10           A form of verdict has been prepared for your

11   convenience, and they are both -- I've got them here.  There's

12   two different verdicts, one for each defendant, and they are

13   substantially similar except they only include the charges that

14   the particular defendant was charged with.  But it reads as

15   follows.  It's got the name of the case at the top, United

16   States of America, and this one says versus John Patrick Couch,

17   MD, and says:  Verdicts, we, the jury, find the defendant John

18   Patrick Couch, MD, and then it says guilty/not guilty as

19   charged in count one.

20           When you have arrived at a verdict on count one, the

21   foreperson will circle the one you have found, either guilty or

22   not guilty, put an X through the one that you have not found so

23   that when you return this to court and we see what you've got

24   there, it's immediately apparent which one is your verdict.

25   You will circle the one you have found, put an X through the

6357

1    one you did not find.  And it goes on through each, through

2    each of the counts which Dr. Couch is alleged to have committed

3    and then the same type of verdict form for Dr. Ruan, where you

4    would circle the one you find, put an X through the one you

5    don't find.

6            They all look the same, the counts all look the same,

7    except for count three.  On both of these, both Dr. Ruan and

8    Dr. Couch are charged in count three, and it says guilty/not

9    guilty as charged in count three.  You would circle the one you

10   find, put an X through the one you don't find.  But then it

11   says:  If and only if you find the defendant guilty of count

12   three, you must unanimously agree on whether the weight of the

13   substance dispensed, fentanyl, exceeded 40 grams or was 40

14   grams or below.  And then it gives you a place to check

15   whichever one you find.  There's a blank and you will check the

16   one you find, either more than 40 grams of fentanyl were

17   involved in the offense or 40 grams or less of fentanyl were

18   involved in this offense.  So you don't need to fill that out

19   if you find not guilty on count three.  But if you find guilty

20   on count three, you would have to make a finding as to the

21   weight.

22           Now, once you have filled out the verdict forms, the

23   foreperson will sign and date it and you will bring these forms

24   back into court with you and we will deliver the verdict in

25   open court.

6358

1        Now, if you wish to communicate with me at any time

2   while you are deliberating, we have a form for that too.  And

3   it's a note form.  I don't see it here.  Oh, here it is.

4        Again, it has the name of the case at the top and it

5   just simply says:  Note to the Court.  It says:  The jury has

6   reached a unanimous verdict?  And there's a place to check

7   either yes or no.  If you have reached a unanimous verdict and

8   are ready to return the verdict into court, you would check

9   yes, the foreperson would sign and date it, and would send it

10  out to the court security officer who will be outside of your

11  jury deliberation room.  That way the court security officer

12  will bring this and notify us that you are ready to return a

13  verdict, we will bring you back into court with the verdict

14  forms and return the verdict.

15        If you check no, because you have some other request

16  of the Court, you would check no and it says:  The jury

17  requests the following.  And there's a space to hand write

18  whatever your request might be.

19        I caution you that you've heard all the evidence in

20  the case.  So don't send out a question:  Is there any more

21  evidence on X, Y, or Z?  Because there isn't any.  Okay?

22  You've heard all the evidence.  But if you have some other type

23  request -- and also we cannot play back or read back

24  transcripts of what testimony might have been.  You will have

25  to rely on your memory as to what the testimony was in this

1    case.

2         But I know that we've got -- you will have all of the

3    evidence with you in the courtroom, but we will not have a

4    computer for you to play the videotape if you want to look at

5    that again.  So if you want to look at that, you'd have to send

6    out a note, we'd have to bring you back into the courtroom and

7    let you view any of the videos again that were evidence in this

8    case.

9         Or if you have a question about something in the law

10   that you don't find clear from the instructions, you could

11   write that down and send it out here.

12        But I will say that if you send out a request for

13   information from the Court about the law or about an item of

14   evidence that you want to repeat, don't expect an immediate

15   response, because you know how things go around here.  If you

16   have a request such as that, I would have to get the lawyers

17   together, we'd have to decide whether it's possible to answer

18   the question and, if so, what the proper answer would be.  So,

19   you know, it may be a little while before we can get back to

20   you.  So don't think we've just completely forgotten about you

21   if you send out a request and we don't get back to you

22   immediately.

23        If you do send out a note, do not under any

24   circumstances tell us how you stand in your deliberations on

25   the case.  Either orally or in writing, do not tell us so many

1    want to vote this way and so many want to vote that way.  If
2    you were to do that, that could cause us to abort the trial and
3    have to start all over again.  We definitely do not want that
4    to happen.  So do not give us any kind of information like
5    that.

6           Let me see the lawyers at side bar for just a moment.
7       (At the side bar, jury not present.)

8           THE COURT:  Are there exceptions to the charge as
9    given that have not already been raised?

10          MR. SHARMAN:  Not that have not already been raised.
11   We renew our objections, but there are no new ones.

12          MR. BODNAR:  Your Honor, we do have one thing on page
13   21.  This is a mistake, K.D. in count 13 is not Karen Dawe, but
14   Kenneth Daves.  That's who that K.D. is.

15          THE COURT:  Okay.  Do you have any objection to me
16   telling them I got that wrong?

17          MR. POWELL:  (Shaking head negatively.)

18          THE COURT:  Okay.  Anything else?  Do you have any
19   exceptions?

20          MR. ARMSTRONG:  No.

21          MR. POWELL:  No, ma'am.

22          MR. BODNAR:  No.  Thank you, Your Honor.

23      (In open court, defendants and jury present.)

24          THE COURT:  All right.  I've been told I got this
25   wrong.  On page --

6361

1          MR. BODNAR:  Page 21, Your Honor.

2          THE COURT:  -- page 21, turn to page 21 of your

3    instructions there.  As to count 13, where I said it pertained

4    to the patient Karen Daw, I got that wrong.  The K.D. stands

5    for Kenneth Daves, D-A-V-E-S.  So you might want to write that,

6    make that correction.  Kenneth Daves.

7          Okay.  Now, as I'm sure you all realize, there are

8    more than 12 of you in the box.  There are 14 of you.  We

9    started out with 16 because in a case of this length there's

10   always the possibility that something will happen to one or

11   more of the jurors.  Thankfully we only lost two.  But only 12

12   jurors are necessary to deliberate on the case.

13         So Ms. F...... and Mr. W......, you are the two

14   alternates and you will not need to deliberate on the case.  I

15   do not under any circumstances want you to think that your

16   participation in this trial was any less important than the

17   ones who will actually deliberate on the verdicts in this case.

18   Because our system of justice simply would not work without

19   alternate jurors.  We have to have enough jurors to make it all

20   the way to the end of the case and still have 12 jurors.

21         On behalf of the Court, I thank you profoundly for

22   your participation in this case, because I know it was a large

23   burden on you to take this much time out of your personal lives

24   in order to sit as a juror in this case.  So thank you very

25   much.

1            But at this time you may go downstairs and check out

2    with the jury assembly clerk and you may be excused.

3            We will shred your notes for you.  Okay.

4            And I hope we will see you again, but not too soon.

5     Okay.

6        (Alternate jurors...were excused.)

7            THE COURT:  Now, the rest of you, in just a few

8    minutes -- the jury room back there is too small to include all

9    of you and all of the evidence.  So we are going to put you in

10   a larger jury room in a different area of the courthouse.  But

11   you are going to be able to set your own schedule for

12   deliberations in this case.  I would suggest you get organized

13   and elect a foreperson and then decide when you want to take

14   your breaks, how you want to take your breaks, what time you

15   want to recess for the day, what time you want to start again

16   next week.

17           I will note that Monday is another federal holiday.

18   It's Washington's birthday, which has wrongly been named

19   Presidents' Day.  It is Washington's birthday.  We will not be

20   deliberating on that day, because there will be no one at the

21   courthouse.  The courthouse will be closed.  So if you don't

22   reach a verdict by the end of the day, you will be coming back

23   on Tuesday morning.  When you decide to recess for the day, I

24   want you to -- I want to bring you back in here and give you

25   some further instructions, just the usual thing about not to

 1    discuss the case and that sort of thing, but I want to do that
 2    before you leave for the day.
 3          So once you get upstairs and get organized and the
 4    clerk has brought you all the paperwork you will need, you can
 5    begin your deliberations.
 6          When you go to lunch, please let the CSO, court
 7    security officer, who will be outside your deliberation room,
 8    know how long you're going to be gone, when you'll be back.  If
 9    you decide to take breaks from deliberating, take them
10    downstairs in the jury deliberation room.  So just get out of
11    the deliberation room to take a break.  At no time should you
12    be talking about the case unless all 12 of you are together in
13    the jury deliberation room.  So if you go to lunch in groups or
14    if you take breaks, don't talk about the case until you're back
15    in the jury deliberation room.
16          Also, when you decide to leave for the day, you will
17    need to let the court security officer know so they can let us
18    know, because our schedule will depend on your schedule as to
19    when we leave the courthouse and take our breaks.
20          I will say that, you know, during Mardi Gras season it
21    sometimes gets crowded downtown.  So if you want to break
22    earlier than 5 o'clock in the afternoon, that's fine.  You're
23    setting your own schedule.  Just let us know.
24          Now, with that, I think we're ready.  I'm going to ask
25    the court security officer to take you to the room where you

 1   will be deliberating and, once you've got all the paperwork,

 2   you can begin your deliberations.

 3          Thank you very much.

 4      (The jury retired to deliberate at approximately

 5   10:29 a.m.)

 6          THE COURT:  All right.  Counsel, as I indicated

 7   earlier, I want somebody here all the time because, as soon as

 8   we get out of pocket, I know they will have a question.  So

 9   just let Mary Ann know where you can be located.

10      (A recess was taken at 10:30 a.m.)

11      (1:20 p.m., the jury requested a copy of the exhibit

12   lists.)

13      (1:29 p.m., in open court, defendants and jury not

14   present.)

15          THE COURT:  All right.  What's up?

16          MS. GRIFFIN:  Your Honor, I was in room 438 on the

17   fourth floor and Mr. May came in and advised me of something

18   that one of the CEOs had told him.  And I thought that we

19   should report it to the Court.

20          MR. MAY:  Yes, Judge.  I was leaving the courthouse

21   after our sentencing and one of the CSOs just said:  You need

22   to tell him.

23          You know, two of them were talking.

24          And so I said:  What do you need to tell me?

25          And one of them said, well, he heard something.

```
 1              And the CSO that I talked to, his name's Steve Eiland,
 2   is the CSO.  And he was concerned.  He seemed like he wasn't
 3   sure what to do and he needed to report it to someone.  He said
 4   that he had overheard -- another CSO had told him -- I didn't
 5   get -- I didn't go and do any investigation.  Just that the
 6   other CSO had heard the jurors talking and one of the jurors
 7   essentially said something to the effect of:  You all do what
 8   you want, keep deliberating.  I made up my mind after the
 9   second week.  But y'all just, you know, do whatever you
10   want.  My mind is made up.
11              So the CSO Eiland told me he heard that from another
12   CSO, who heard it from the juror.  No names, no -- I didn't
13   want to investigate it further.  I just reported it to
14   Ms. Griffin.  And that's what happened, Judge.
15              THE COURT:  All right.  Thank you.
16              MR. MAY:  Thank you, Judge.
17              MS. GRIFFIN:  Thank you, George.
18              THE COURT:  Now, what do y'all want to do about it, if
19   anything?
20              MR. KNIZLEY:  Nothing.
21              MR. SHARMAN:  I don't know if there's anything to do,
22   Judge.
23              THE COURT:  Yeah.  I don't either.
24              MS. GRIFFIN:  I would only ask that perhaps Mary Ann
25   inquire and find out who heard it, if it was out in the hall or
```

6366

 1   where it was, so that we can be better informed.

 2          THE COURT:  Better informed about what was said?

 3   Or --

 4          MS. GRIFFIN:  You know, is this something that was

 5   today?  Is this something that was a couple of weeks ago?

 6   Or --

 7          THE COURT:  Does it make a difference?

 8          MS. GRIFFIN:  Well, the problem with it is if

 9   somebody's already made up their mind before they are charged

10   to be deliberating, it's problematic with them serving.  But as

11   to what we do about it, I'm not sure.

12          MR. KNIZLEY:  We heard what the report was.  But y'all

13   keep on deliberating, as it was.

14          THE COURT:  I mean, you know, any juror can sit in

15   there and they have their mind made up.  But it may change it

16   after the rest of them are talking.  So, I mean, I don't think

17   there's really anything we ought to do about it.

18          MS. GRIFFIN:  I did feel that I needed to come report

19   it, however.

20          THE COURT:  Oh, yeah.  I think that was absolutely

21   proper.  So all right.  Thank you.

22          MR. KNIZLEY:  Thank you.

23          THE COURT:  Now, I understand they want the jury

24   exhibit list, and we're going to redact the ones that weren't

25   admitted and give them everybody's exhibit list, if that's all

6367

```
 1   right with you.
 2            MR. SHARMAN:  Yes, ma'am.
 3            MR. KNIZLEY:  That's fine.
 4            MR. POWELL:  Yes, ma'am.
 5            THE COURT:  And they wanted a legal pad.
 6            THE CLERK:  Yes, ma'am.
 7            THE COURT:  That we gave them.  I guess we ought to
 8   give them something to write on.
 9            MS. GRIFFIN:  Yes, ma'am.
10            THE COURT:  All right.
11       (A recess was taken at approximately 1:32 p.m.)
12       (3:58 p.m., in open court, defendants and jury present.)
13            THE COURT:  All right.  I think I'm on.  All right.
14   Ladies and gentlemen, thank you for your work today.  I know
15   that you're just getting started.  So I want to remind you of
16   your obligation not to say anything to anybody about your
17   deliberations or about the case until you have completed your
18   service in this case.
19            I also want to caution you not to say anything to
20   anybody in the courthouse, court personnel or otherwise.
21   Anything you say about the case needs to be done inside the
22   jury deliberation room when all of you are present so, other
23   than that, there is no discussion about the case.
24            Please have a good weekend.  Try and put it out of
25   your mind.  We've got a three-day weekend coming up.  So we'll
```

1   see you back on Tuesday morning at 9 o'clock in the jury

2   assembly room, ready to begin work again.  Once all 12 of you

3   are assembled in the jury assembly room downstairs, the court

4   security officer will take you to your deliberation room.  You

5   won't have to come into the courtroom again before you begin

6   your deliberations on Tuesday.  Have a good weekend.  We're in

7   recess.

8       (In open court, defendants present, jury not present.)

9           THE COURT:  All right.  Counsel, I hope all of you

10  have a good weekend as well.

11      (Court adjourned at approximately 4 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25