

1          UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF ALABAMA
2

3   UNITED STATES OF AMERICA
                                    CASE NO. CR15-00088
4   v.
                                    COURTROOM 2B
5   JOHN PATRICK COUCH, MD,
    and XIULU RUAN, MD,
6                                   MOBILE, ALABAMA
            Defendants.
7                                   THURSDAY, FEBRUARY 23, 2017
    * * * * * * * * * * * * * * *
8   REDACTED

9                    DAY 31 OF TRIAL
            BEFORE THE HONORABLE CALLIE V. S. GRANADE,
10        SENIOR UNITED STATES DISTRICT JUDGE, AND JURY

11

12

13  APPEARANCES:

14  FOR THE GOVERNMENT:
        DEBORAH A. GRIFFIN
15      CHRISTOPHER BODNAR
        United States Attorney's Office
16      63 S. Royal Street, Suite 600
        Mobile, AL  36602
17      (251) 441-5845

18
    FOR THE DEFENDANT COUCH:
19      ARTHUR T. POWELL, III
        P.O. Box 40456
20      Mobile, AL 36640-0456
        (251) 433-8310
21
        JACKSON R. SHARMAN, III
22      ROBERT JACKSON SEWELL
        JEFFREY PAUL DOSS
23      BENJAMIN SANDERS WILLSON
        Lightfoot, Franklin & White
24      400 North 20th Street
        Birmingham, AL  35203
25      (205) 581-0700

1    (Continued)

2        BRANDON KEITH ESSIG
         800 Shades Creek Parkway, Suite 600D
3        Birmingham, AL  35209
         (251) 879-1981

4

5    FOR THE DEFENDANT RUAN:
         DENNIS J. KNIZLEY
6        7 N. Lawrence
         Mobile, AL 36602
         (251) 432-3799

7

8        JASON BRADLEY DARLEY
         Darley & McGough, LLC
9        1751 Dauphin Street
         Mobile, AL 36604
10       (251) 441-7772

11       GORDON G. ARMSTRONG, III
         P.O. Box 1464
12       Mobile, AL  36633
         (251) 434-6428

13       STEVEN D. MARTINIE
         4955 North Lake Drive
14       Whitefish Bay, WI  53217
         (414) 332-9683

15

16   THE CLERK:  MARY ANN BOYLES
     THE LAW CLERK:  LYNN DEKLE
17   COURT REPORTER:  ROY ISBELL, CCR, RDR, CRR

18           Proceedings recorded by OFFICIAL COURT REPORTER
             Qualified pursuant to 28 U.S.C. 753(a) & Guide to
19       Judiciary Policies and Procedures Vol. VI, Chapter III, D.2.
             Transcript produced by computerized stenotype.

20

21

22

23

24

25

1          (Morning session, 9:46 in chambers, jury not present.)

2               THE COURT:  Good morning.

3               MR. KNIZLEY:  Good morning, Judge.

4               THE COURT:  Good morning.

5               MR. BODNAR:  Good morning.

6               MR. SHARMAN:  Good morning, Judge.

7               THE COURT:  Good morning.  Y'all have a seat.

8   Just pull that chair up, if you want to.

9               MS. GRIFFIN:  Pull a chair up.

10              MR. KNIZLEY:  About 15 minutes ago -- you may have

11  noticed the young lady, my assistant, who has been in the

12  courtroom the entire time, the blond-headed lady who's been

13  here quite some time.  She's not at work today, she's ill,

14  hasn't been in in two days.  She called and said the

15  receptionist, who is a 20-year-old, 20-year-old young lady in

16  my office, knows little or nothing about this case, had just

17  received a phone call from a gentleman who had identified

18  himself as an alternate juror.  He identified himself as J...

19  W...... and wanted to speak with me.

20              And she told him I was in federal court right now.  He

21  says:  Yes, I know that.  But I have some information he needs

22  to have.  It is very important and it's urgent that he call me

23  back.

24              Being inexperienced, she called the lady who has been

25  in the courtroom, home sick, who called me, and I said:  You

1  call her back and say:  Don't say a word to this person.  If

2  the person were to call back, just take the information and

3  don't say anything else.

4          He does call back, asking for Mr. Sharman's phone

5  number.  And she said:  I do not have that.

6          He said:  Well, you have my number; right?

7          Right.

8          And, then, that is all I know right now.

9          MR. SHARMAN:  And I called my office and told them,

10  you know, if somebody calls wanting my number that they

11  shouldn't give it out.

12          MR. BODNAR:  We haven't heard anything from anybody.

13          THE COURT:  You're on the outs apparently.  I don't

14  know.  Well, so --

15          MR. KNIZLEY:  I just didn't want the information and

16  not deliver it.

17          THE COURT:  Yeah, yeah.  Well, he hasn't been on the

18  deliberations.  So I'm a little hesitant for anybody to have

19  any contact with him at this point.

20          MR. KNIZLEY:  Well, I think we still have him as a

21  potential alternate once more maybe.  I don't think he's been

22  released from service.

23          THE COURT:  Well, he has.  He's been excused.  I

24  excused him.  And we were just lucky to get the one back.  So

25  he is -- he's not on the hook.

6389

```
 1          MR. SHARMAN:  I guess the only thing that strikes me,
 2   Your Honor, is not necessarily the contact for the reasons you
 3   say, but what is it that he wishes to convey with such urgency?
 4   It may be urgent or important only to him and not to the
 5   process at all.  Or it could be something actually
 6   important.  But how to -- how to handle that if it's to be
 7   handled at all, I don't know, unless the Court were to make
 8   some kind of inquiry of it.
 9          THE COURT:  All right.  Do you want me to?
10          MR. KNIZLEY:  I don't want to do anything the Court
11   would not want done or anything.  I mean, you know, were the
12   case over and the Court gave me permission, I would inquire as
13   to him.  I don't know, Judge.  I mean, you don't want me to
14   call him, do you?
15          THE COURT:  I do not.  I don't want any party having
16   any contact with him.
17          MR. SHARMAN:  I mean, Your Honor, I don't feel
18   strongly, for the reasons you identified.  I mean, he's
19   obviously not deliberating.  It's not as though a juror reached
20   out to one of the parties.  So, you know, I think unless the
21   Court has an independent concern about the integrity of the
22   process or something, I don't think it's --
23          MR. KNIZLEY:  And I think that I concur with Jack,
24   unless the Court has some reason to want to inquire further.  I
25   will have a concern -- and Jack may as well -- if this person
```

1    may call again and may leave information.

2          THE COURT:  I think that's likely.

3          MR. KNIZLEY:  He may leave information.  I don't want

4    to be rude to the gentleman either.  I received the phone call.

5    But I don't want to put him in an uncomfortable position if he

6    gets a call from the judge either.  I really don't know how to

7    handle it.

8          THE COURT:  Well, having seen him in action in the

9    jury box, he was a rather proactive juror during the course of

10   the trial.

11         MR. KNIZLEY:  Yes, yes.

12         THE COURT:  I don't think -- I don't think he would be

13   concerned if I called him.  I mean, I don't have any objection

14   to calling him and telling him that I understand he's reaching

15   out to some of the lawyers in the case and is there something

16   that he needs for the Court to know.

17         MR. KNIZLEY:  I --

18         MR. SHARMAN:  That seems -- to me that seems neutral

19   and appropriate.  And then the Court can make an assessment

20   about whether it matters in any way or not.

21         THE COURT:  Yeah.

22         MR. KNIZLEY:  The number he left was 654-5591.

23         THE COURT:  And his name is --

24         MR. KNIZLEY:  His name -- he left his name as E.....

25   W.......  It appears from the jury list it may be JE.........

1    W.......
2         THE COURT:  Okay.  Let's go by E..... then.
3         All right.  Well, I will try and reach out to him.
4    And if it's anything that should be of concern to any of us, I
5    will let you know.
6         MR. KNIZLEY:  Yes, ma'am.
7         THE COURT:  Okay.
8         MS. GRIFFIN:  Judge, would you like us to just wait
9    out in the --
10        THE COURT:  Please.
11        MS. GRIFFIN:  -- courtroom for a few minutes?
12        THE COURT:  Uh-huh (positive response).
13    (A recess was taken at 9:51 a.m.)
14    (In chambers, 9:57 a.m., jury not present.)
15        THE COURT:  I think this is information we already
16    have.  But he said that he wanted the Court to know and
17    apparently wanted y'all to know too that during the course of
18    the trial there was one of the jurors who said she had made up
19    her mind and she's still on the jury.  He thought we ought to
20    know that.  And he said:  And other jurors heard her say that.
21        So this is the one that I wanted to replace with an
22    alternate that you objected to.
23        So there you have it.  Is there anything you want to
24    do with that information?
25        MR. BODNAR:  Are we assuming -- do we know it's the

```
 1    same person?
 2            THE COURT:  He didn't say who it was.  He just said
 3    one of the jurors who is deliberating.
 4            MR. BODNAR:  Sounds like it.
 5            THE COURT:  And we know that another juror overheard
 6    her say that.
 7            MR. BODNAR:  Yes.
 8            THE COURT:  So I'm just assuming it's the same person.
 9            MR. SHARMAN:  I don't think so, Judge.
10            MR. KNIZLEY:  You know, we're all guessing as to
11    what -- we may have some idea, but it may be totally wrong,
12    which way they have their mind made up, unless we want to
13    inquire further or just leave it alone.  Jack?
14            MR. SHARMAN:  I'm fine with it.
15            MS. GRIFFIN:  We're fine with that too.
16            THE COURT:  All right.  Thank you very much.
17            MS. GRIFFIN:  Thank you.
18            MR. KNIZLEY:  Judge, he was not upset that I tattled
19    on him?  Or was he?  Could you tell?
20            THE COURT:  No, he was not upset.
21            MR. BODNAR:  Thank you, Your Honor.
22            THE COURT:  Thank you.
23        (This hearing adjourned at approximately 9:57 a.m.)
24        (in chambers, 10:25 a.m., jury not present.)
25            THE COURT:  All right.  The jury has arrived at a
```

1    verdict.  And I don't know.  Have you -- I have no idea

2    obviously what the verdict is.  My guess is it's a defense

3    verdict, them coming back so soon.  But if it is not, on any of

4    the forfeiture counts have you arrived at any sort of

5    conclusion?

6          MR. SHARMAN:  At least for Dr. Couch, Your Honor, we

7    have not.  We've had multiple discussions with the government.

8    We've traded -- or they've provided drafts.  The problem has

9    been that, given the number and variety and diversity of the

10   counts, it's difficult to essentially predict a number at which

11   one could settle, so to speak.  Because depending on a count of

12   conviction, it could be a considerable swing.  So the short

13   answer is we have not.

14         THE COURT:  Okay.  And if there is a conviction on any

15   of the forfeiture counts, are you going to be putting on other

16   evidence?

17         MS. GRIFFIN:  Just one witness.  But we have proposed

18   an agreement to both.  And I would hope that once we know, yea

19   or nay, we might have a few minutes to discuss if they are

20   willing to accept that.

21         THE COURT:  All right.  All right.  Well, let's call

22   the jury down.

23         THE CLERK:  Yes, ma'am.

24      (A recess was taken at approximately 10:27 a.m.)

25      (In open court, 10:32 a.m., defendants and jury present.)

1           THE COURT:  All right.  I understand that the jury has

2    reached a unanimous verdict; is that correct?

3           A JUROR:  Yes.

4           THE COURT:  All right.  Would you hand the paperwork

5    to the clerk, please?

6           A JUROR:  (Complying.)

7           THE COURT:  All right.  I'm going to ask the clerk to

8    publish the verdict.

9           THE CLERK:  Will the defendants and their counsel

10   please stand?

11          Verdicts in United States of America versus John

12   Patrick Couch, MD, criminal case number 15-88:  We, the jury,

13   find the defendant John Patrick Couch, MD, guilty as charged in

14   count one, guilty as charged in count two, guilty as charged in

15   count three.  The jury having found the defendant guilty, the

16   amount of fentanyl dispensed was more than 40 grams.  Guilty as

17   to count four, guilty as to count five, guilty as to count six,

18   guilty as to count seven, guilty as to count 13, guilty as to

19   count 14, guilty as to count 15, guilty as to count 16, guilty

20   as to count 17, guilty as to count 19.

21          Verdicts in United States of America versus Xiulu

22   Ruan, MD, criminal case number 15-88:  We, the jury, find the

23   defendant Xiulu Ruan, MD, guilty as charged in count one,

24   guilty as charged in count two, guilty as charged in count

25   three.  The jury found that the defendant dispensed fentanyl in

6395

1    the amount of more than 40 grams.  Guilty as to count four,

2    guilty as to count eight, guilty as to count nine, not guilty

3    as to count 10, guilty as to count 11, guilty as to count 12,

4    guilty as to count 15, guilty as to count 16, guilty as to

5    count 17, guilty as to count 19, guilty as to count 20, guilty

6    as to count 21, guilty as to count 22.

7              Y'all may be seated.

8              THE COURT:  All right.  Would anyone like the jury

9    polled?

10             MR. SHARMAN:  Dr. Couch would, Your Honor.

11             MR. KNIZLEY:  Yes, ma'am.

12             THE COURT:  All right.  Ladies and gentlemen, what

13   that means is I'm going to ask each of you by your number,

14   beginning with one, if those are your individual verdicts.  All

15   right.  Juror number one, is that your individual verdicts?

16             A JUROR:  Yes.

17             THE COURT:  Juror number two, is that your individual

18   verdicts?

19             A JUROR:  Yes.

20             THE COURT:  Juror number three, is that your

21   individual verdicts?

22             A JUROR:  Yes.

23             THE COURT:  Juror number four, is that your individual

24   verdicts?

25             A JUROR:  Yes, ma'am.

6396

1      THE COURT:  Juror number five, is that your individual

2   verdicts?

3      A JUROR:  Yes.

4      THE COURT:  Juror number six, is that your individual

5   verdicts?

6      A JUROR:  Yes, ma'am.

7      THE COURT:  Juror number seven, is that your

8   individual verdicts?

9      A JUROR:  Yes.

10      THE COURT:  Juror number eight, is that your

11   individual verdicts?

12      A JUROR:  Yes, ma'am.

13      THE COURT:  Juror number nine, is that your individual

14   verdicts?

15      A JUROR:  Yes, ma'am.

16      THE COURT:  Juror number 10, is that your individual

17   verdicts?

18      A JUROR:  Yes.

19      THE COURT:  Junior number 11, is that your individual

20   verdicts?

21      A JUROR:  Yes, ma'am.

22      THE COURT:  And juror number 12, is that your

23   individual verdicts?

24      A JUROR:  Yes, ma'am.

25      THE COURT:  All right.  Ladies and gentlemen, I need

```
 1    to talk to the lawyers for just a minute before we do anything
 2    else.  So let me see the lawyers at side bar.
 3        (At the side bar, jury not present.)
 4            THE COURT:  Are you ready to proceed on the forfeiture
 5    counts?  Do we want to let the jury have a recess for maybe an
 6    hour?
 7            MR. SHARMAN:  If we could do that, that would be
 8    great.
 9            MR. KNIZLEY:  Let us talk to them, recess them for one
10    hour, we'll talk and see if --
11            THE COURT:  I'm going to tell them there are
12    additional things they may have to decide, but we won't know
13    until after you've had a chance to confer.
14            MR. SHARMAN:  That's fine.
15            THE COURT:  And to put them into recess for an hour.
16    Okay.
17            MR. KNIZLEY:  Yes, ma'am.
18            MR. SHARMAN:  Yes, ma'am.
19        (In open court, defendants and jury present.)
20            THE COURT:  Ladies and gentlemen, ordinarily the
21    verdicts you have returned would be an end to the case.
22    However, there are some allegations in this indictment
23    involving the forfeiture of properties that may have been
24    involved in these offenses which you may have to
25    decide.  However, we don't know that you will have to decide
```

1    that yet until the jury -- excuse me -- the lawyers have a

2    chance to confer.  So I am going to put you into recess for one

3    hour.  So just take a break.  You can do it downstairs in the

4    jury assembly room or you can go back upstairs to the jury

5    deliberation room.  Your choice.

6          And we will meet again in one hour, when I will bring

7    you back to the courtroom and let you know what will proceed at

8    that point.  If there will be more proceedings, there will only

9    be one additional witness, I understand.  So at this point I'm

10   going to put you into recess and call you back in one hour.

11         All right.

12     (In open court, defendants present, jury not present.)

13         THE COURT:  All right.  Counsel, if you know before

14   the hour is up, let me know.  All right.

15         MR. BODNAR:  Yes, ma'am.

16         MS. GRIFFIN:  Yes, Your Honor.

17     (A recess was taken at approximately 10:38 a.m.)

18     (In chambers, 11:38 a.m., jury not present.)

19         THE COURT:  Have a seat.

20         MS. GRIFFIN:  Your Honor, we have a stipulation for

21   forfeiture from each defendant.  We also have three additional

22   forfeiture agreements that have been entered into pending this

23   litigation and we would like to file all five of these

24   documents with the Court.

25         THE COURT:  All right.  Do you want to file them in

6399

1    open court?

2          MS. GRIFFIN:  I do.  And we have a statement also, the

3    parties, about agreeing if there was a reversal of any count

4    what would happen in connection with the forfeiture.  We'd like

5    to put all that on the record.

6          THE COURT:  All right.  Do you want to put it on the

7    record right now?  Or do you want to do it in open court?

8          MR. KNIZLEY:  That's fine.

9          MR. POWELL:  That's fine.

10         THE COURT:  With your clients?

11         MR. SHARMAN:  Fine.

12         MS. GRIFFIN:  Okay.  The parties agree that if any

13   count of conviction is reversed on appeal, the forfeiture

14   amount would be subject to judicial redetermination for the

15   remaining counts of conviction.

16         And we have a stipulation and agreement for forefuture

17   we will be presenting as soon as the Court is back next week, a

18   preliminary order of forfeiture for entry.

19         THE COURT:  Okay.  All right.  Anything else?

20         MR. SHARMAN:  A couple of things, Your Honor.  I think

21   our deadline for post-trial motions is two weeks.  We'd like 30

22   days, if possible, just to collect exhibits and transcripts we

23   may not have and so forth.

24         THE COURT:  All right.  You can have 30 days.

25         MR. SHARMAN:  Thank you.

1          MS. GRIFFIN:  And we will be asking for the defendants
2    to be remanded into custody.
3          THE COURT:  All right.
4          MR. POWELL:  Judge, in that regard we would like to be
5    heard on that issue, particularly as regards Dr. Couch's
6    health -- which we'd be more than happy to provide the Court
7    now, if you want to do it, or in open court.
8          THE COURT:  Yeah, let's do it now.
9          MR. POWELL:  This is -- you haven't seen this.  This
10   is a letter from his doctor that we got regarding his wounds,
11   or wound.  And I --
12         THE COURT:  I don't want to see any pictures.
13         MR. POWELL:  It's bad.  And I can show -- I'll be glad
14   to show it to whomever.  It is a hole in his leg and it's
15   gotten worse.  He has managed to get through this, but --
16         MS. GRIFFIN:  This letter's from a plastic surgeon.
17         MR. POWELL:  I know.  He's also wound care.  That's
18   what it looks like (indicating).
19         THE COURT:  It is a hole.
20         MR. POWELL:  (Indicating.)
21         THE COURT:  (Reading.)
22         MR. POWELL:  The reason that he's been going to see
23   Dr. Lyons is because he's been treating him for it since he
24   was -- he had a wound care specialist before that.  But because
25   we've been in trial, he can't get an appointment with this

```
1   person.  So he goes and sees Dr. Lyons, who debrides it and
2   treats it after court.  So --
3           THE COURT:  Okay.  Well, I think exceptional
4   circumstances do exist in his particular case.  And I
5   understand there is an objection to it.  But --
6           MS. GRIFFIN:  Judge, could we put him on 24-hour home
7   monitoring and some other restrictions?  Because, you know,
8   they can treat him, of course, in the various facilities and --
9           THE COURT:  He would have to have hyperbaric treatment
10  every day for weeks.  So --
11          MS. GRIFFIN:  We would ask a complete change in his
12  conditions.  I understand he's not paid his mortgage for
13  January, not going to be able to make it for February.  And if
14  he's going to remain in that house, which we are taking, he's
15  going to have to keep the mortgage payments current.  So --
16          MR. POWELL:  Or he will have to maintain a different
17  residence.
18          MS. GRIFFIN:  Or have to maintain a different
19  residence.
20          MR. SHARMAN:  Which is more likely.
21          MR. POWELL:  Which is a lot more likely.
22          MS. GRIFFIN:  And if there's any violation
23  whatsoever --
24          MR. POWELL:  He has been completely and overly
25  compliant.
```

```
 1              THE COURT:  Is probation here?
 2              THE CLERK:  No, ma'am.  Morris couldn't make it over.
 3    I can call him.
 4              THE COURT:  Well, I tell you what:  I don't want to
 5    bring this jury up if we don't have to.  I think they are ready
 6    to go.  And I'm just going to go downstairs and thank them and
 7    let them go.
 8              So see if you can get probation over here and let's
 9    talk about some conditions for him.  But I don't know of any
10    exceptional circumstances in Dr. Ruan's case.
11              MR. KNIZLEY:  Judge, I was going to request the same.
12    Dr. Couch is out and, of course, the Court's heard it all
13    before.  We're taking him from a situation where he's occupying
14    the homeplace with his sister and brother-in-law from out of
15    town.  We're going to have to, of course, find another place
16    for them to stay and there's an awful lot to do.  As
17    Mr. Sharman said, you know, we're looking at 30 days to get
18    prepared for a motion for new trial.  And there's millions and
19    millions of documents we have.  The Greenway system that we've
20    relied upon in the course of this trial, we now have to get all
21    the information out of that because we can't pay for it any
22    more.  And it's just a tremendous amount of things that need to
23    be done in anticipation of going to jail.  And we'd ask the
24    Court, because Dr. Couch is being released, to consider the
25    analogous treatment with both people and we'd ask the Court to
```

```
1    consider leaving him out.  Of course, if he was going to be a
2    flight risk, he would have long since been one.
3              THE COURT:  Well, go ahead.
4              MS. GRIFFIN:  His sister and brother-in-law don't live
5    here.  They have a home somewhere else.
6              MR. KNIZLEY:  Sure, sure.  But they are here right
7    now.
8              MS. GRIFFIN:  You know, he has family still in another
9    country, which is of concern.  He could disappear.
10             THE COURT:  Well, I would have to find some sort of
11   exceptional circumstance.  I just don't see it in this case.
12             MS. GRIFFIN:  And we would ask also if we could
13   revisit the Dr. Couch matter in 30 days.
14             THE COURT:  You can.  We'll see how he's doing.  But
15   all right.  So let's get the marshals and probation over here
16   and let me go downstairs and discharge this jury and then we
17   will address the post-trial issues.
18             MR. POWELL:  Yes, ma'am.
19             THE COURT:  Before y'all go out there, I just want to
20   say how much I have enjoyed trying this case with all of you.
21   Everybody has been great to get along with.  There's been no
22   problems, and it's a long, difficult trial for everybody, and I
23   just appreciate that.  Thank you.
24             MR. SHARMAN:  Thank you.
25             MR. POWELL:  Thank you.
```

1            MS. GRIFFIN:  Thank you, Your Honor.

2            MR. KNIZLEY:  Thank you.

3            THE COURT:  I'll be back in a few minutes.

4            MR. POWELL:  Yes, ma'am.

5        (A recess was taken at 11:47 a.m.)

6        (In open court, 12:12 p.m., defendants present, jury not

7    present.)

8            THE COURT:  All right.  Dr. Couch and Dr. Ruan, the

9    jury having returned verdicts of guilty in both of your cases,

10   you are now adjudged guilty and we will set sentencing dates.

11           Will you give us dates, please?

12           THE CLERK:  Yes, ma'am.  For Dr. Couch, May the 25th

13   at 1 p.m.

14           For Dr. Ruan, May the 26th at 1 p.m.

15           THE COURT:  All right.  And we have discussed with

16   counsel the continued conditions of release, if any.  The law

17   requires that upon conviction of some of the offenses of which

18   you have both been found guilty that revocation of the

19   conditions of release are mandated unless there are exceptional

20   circumstances.  Dr. Couch's counsel have presented me with some

21   medical information concerning a condition that he currently

22   has that needs medical treatment on a daily basis for the next

23   few weeks, and so I find that exceptional circumstances are

24   present in that case but am going to amend his conditions of

25   release.

1           And what are the conditions that the government is

2    requesting at this time?

3           MS. GRIFFIN:  We're requesting home detention, Your

4    Honor.

5           THE COURT:  With electronic monitoring?

6           MS. GRIFFIN:  With electronic monitoring.

7           THE COURT:  All right.  We will add that as a

8    condition.  Are there any other conditions that are needed at

9    this time?

10          MS. GRIFFIN:  Well, obviously to avoid contact with

11   Dr. Ruan, which would be difficult for him to do.

12          THE COURT:  All right.

13          MS. GRIFFIN:  And that he have permission to attend

14   medical visits and one other visit that we've discussed with

15   counsel and probation.

16          THE COURT:  All right.  If those conditions will be in

17   his amended conditions of release, the Court concurs with that.

18          Mr. Powell, did you want to add something?

19          MR. POWELL:  No, ma'am.  I just wanted to make sure we

20   were clear.

21          THE COURT:  And I wanted to make sure that Dr. Ruan

22   understands that there are no exceptional conditions in his

23   case, and so therefore he is remanded to the custody of the

24   marshal pending sentencing in this case.

25          Is there anything else we need to take up at this

1    time?

2            MS. GRIFFIN:  Not for the United States, Your Honor.

3            THE COURT:  For the defense?

4            MR. POWELL:  No, Your Honor.

5            MR. SHARMAN:  No, Your Honor.

6            MR. KNIZLEY:  No, ma'am.

7            THE COURT:  All right.  We are adjourned.

8        (Court adjourned at approximately 12:15 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25