# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 15-0088-CG-B |
| | ) |
| XIULU RUAN, M.D., | ) |
| | ) |

## ORDER

This action is before the Court on the objection of Defendant Xiulu Ruan to the Writ of Execution filed by the United States and the Ex Parte Order granting the Writ of Execution (Doc. 785), the response thereto of the United States (Doc. 796), and Ruan's reply (Doc. 799). For the reasons explained below, the Court finds a hearing is not necessary and that the transfer of property in Ruan's divorce decree to Ling Cui and the resulting quit claim deeds should be declared void and set aside.

Defendant Ruan filed a one-page objection to the Writ of Execution filed by the United States and the Ex Parte Order granting the Writ of Execution and requested a hearing on his objection based on the following grounds:

> The Circuit Court of Mobile County, Alabama has granted a divorce to Xiulu Ruan and his wife, Ling Qui, which sets out the terms upon which these parties are divorced, and the Writ of Execution and the Order are an attempt by the United States of America to circumvent the divorce decree.

(Doc. 785). However, as detailed in the United States' response, the divorce decree and resulting quit claim deeds should be set aside as fraudulent transfers.

1

On May 31, 2017, this Court sentenced Defendant Xiulu Ruan to 252 months imprisonment and to pay $15,239,369.93 in restitution and a special assessment of $1,500. (Doc. 665). The United States reports that Ruan has paid no funds towards restitution and has paid only $100 towards the special assessment through the Inmate Financial Responsibility Program. Ruan's court-ordered restitution gives rise to a lien in favor of the United States on all of his property and rights to property, just as if the liability were for a tax assessed under the Internal Revenue Code of 1986. 18 U.S.C. § 3613(c).[1] That lien arose upon the entry of judgment. *Id*.

A judgment of divorce was entered on December 10, 2017 which transferred the majority of Ruan's assets to Ling Cui. (Doc. 796-2). On May 10, 2018, this Court entered a restraining order prohibiting Ruan, his former wife and their agents from "pursuing further action to transfer the real and personal property set forth in the 'JUDGMENT OF DIVORCE' filed December 7, 2017, in Circuit Court of Mobile

---

[1] "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law" to determine whether those interests qualify as "property" or "rights to property" that is subject to the United States' lien. *Drye v. United States*, 528 U.S. 49, 58 (1999). The Court notes that in the instant case, some of the property at issue which is located in Alabama is not owned by Ruan alone but is instead jointly owned by Ruan and Cui. However, the FDCPA provides that "the government may proceed against jointly owned property to the extent permitted by state law." *United States v. Kollintzas*, 501 F.3d 796, 801 (7th Cir. 2007) (citing 28 U.S.C. § 3010(a)). As the United States explained in its brief, Alabama law permits the United States to execute on Ruan's jointly owned property. (Doc. 796, pp. 12-13). The properties located in Florida are owned by Ruan's single member LLC and Florida law provides authority for the United States to execute upon that property. *See Olmstead v. FTC*, 44 So.3d 76, 77 (Fla. 2010) ("Florida law permits a court to order a judgment debtor to surrender all right, title, and interest in the debtor's single-member LLC to satisfy an outstanding judgment.").

County, Alabama, CIVIL ACTION NO.: DR-2011-901100.00-H." (Doc. 769). On May 11, 2018 and June 7, 2018, quit claim deeds were recorded to perfect the transfer of Alabama and Florida properties from Ruan and his LLC to his former wife, Ling Cui, in accordance with the divorce decree. (Docs. 796-9, 796-10). A deed must be recorded to perfect the transfer of property set out in the divorce decree from Ruan and his LLC to Cui . *Johnson v. Haleyville Mobile Home Supply, Inc.*, 477 So. 2d 328 (Ala. 1985) (properly recording an instrument perfects the transfer of title). As such, recording the deed constitutes "pursuing further action to transfer the real ... property set forth in the 'JUDGEMENT OF DIVORCE' " and violates this Court's restraining order.

On May 29, 2018, this Court issued an Order for a Writ of Execution for 15 properties that were owned either solely by Ruan or Ruan's single member LLC (XLR Properties, LLC) or jointly by Ruan and his former wife, Ling Cui. (Doc. 772). The United States Marshal's service seized the properties and filed returns of service. (Docs. 781, 784, 790, 791, 793, 794, 795). On September 5, 2018, counsel for the United States served counsel for Ling Cui, via email. (Doc. 796-11). On September 12, 2018, Ruan filed the instant objection. In response, the United States moves to proceed with the execution and to void and set aside the divorce decree and quit claim deeds as fraudulent transfers.

Pursuant to 18 US.C. § 3613(d), upon the proper filing of a notice of lien, a restitution lien is "valid against any purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor" in the same manner as a notice of tax

3

lien filed under 26 U.S.C. § 6323(f)(1) and (2) of the Internal Revenue Code. In the instant case, the United States filed notices of lien with the Mobile County, Alabama Probate Court on June 12, 2017 and in Bay County, Panama City, Florida on May 3, 2018. (Doc. 796-1). Upon filing the notices of lien, the lien was perfected against all third-party claims that did not have a prior perfected lien. The quit claim deeds in question were perfected on May 11, 2018 and June 7, 2018, after the United States' lien was perfected.

A transfer or obligation "is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation"—

> (A) with actual intent to hinder, delay, or defraud a creditor; or
> (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

28 U.S.C.A. § 3304(b)(1); *see also* ALA. CODE § 8-9A-4(b) (Alabama fraudulent transfer statute which mirrors the federal actual intent theory only). The United States contends that the property transfers in the divorce decree should be voided under either the actual intent theory or because Ruan was insolvent and did not receive adequate consideration for the exchange. Actual fraudulent intent may be inferred from several factors, which include:

> (A) the transfer or obligation was to an insider;

4

(B) the debtor retained possession or control of the property transferred after the transfer;

(C) the transfer or obligation was disclosed or concealed;

(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(E) the transfer was of substantially all the debtor's assets;

(F) the debtor absconded;

(G) the debtor removed or concealed assets;

(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C.A. § 3304(b)(2); *see also* ALA. CODE § 8-9A-4(b) (stating same). All of these factors may not be relevant to any one transfer and the Court can determine actual intent without considering all of the factors listed in § 3304(b)(2). *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 321 n.7 (5th Cir. 2004).

In the instant case, the United States contends that multiple badges of fraud

5

demonstrate Ruan's actual intent to defraud. Factors A and E weigh in favor of finding actual intent to defraud because Ruan transferred the overwhelming majority of his assets to his then-wife, Cui, who was an insider.[2] The United States argues that Ruan concealed the transfer because the Divorce Decree, which was entered on December 12, 2017, was not disclosed to this Court or to the United States at that time. Although it was presumably a matter of public record upon it being entered, the United States reports that it was not informed in this action of the Decree and the first time this Court became aware of the Decree was on May 9, 2018, when the United States moved to restrain the dissipation of the assets listed in the Divorce Decree. (Doc. 768). Thus, the Court finds factor C also weighs in favor of finding the transfer to be fraudulent. Also, at the time the transfer occurred, Ruan had been convicted of racketeering and fraud and sentenced to pay more than 15 million dollars. Because Ruan transferred the majority of his assets at a time when he owed over 15 million dollars, factors I (that he was insolvent or became insolvent shortly after the transfer) and J (that the transfer occurred shortly after a substantial debt was incurred) both indicate actual intent to defraud. Lastly, the transfer does not appear to be for equivalent value (factor H) because, although Ruan received some property in the Divorce Decree, the division of assets was grossly inequitable. *See United States v. Kirtland*, 2012 WL 4463447, at *14 (D. Kan. Sept. 27, 2012) (finding that where the value of the property the defendant

---

[2] Under the FDCPA, the definition of an insider includes "a relative of the debtor." 28 U.S.C. § 3301(5)(A)(i).

6

received as a result of the divorce proceedings was small compared to that transferred to the spouse, "the facts support the determination that the transfer ... did not occur for reasonably equivalent value"). The Court finds that factors A, C, E, I, J, and H all indicate that the properties were transferred with the intent to hinder, delay or defraud.

Ruan's only response to these contentions is that Ruan's divorce had been pending since December 2011 and he and his wife "had numerous negotiations before arriving at the Agreement" which was incorporated into the divorce decree. (Doc. 799). According to Ruan, the Agreement "was not an attempt on the part of Xiulu Ruan to avoid the verdict rendered in his criminal case." (Doc. 799). However, the fact that the divorce had been pending for six years and that Ruan agreed to transfer the majority of his assets to Cui after a judgment was entered against him that he could not pay without the transferred assets provides more evidence that Ruan intended to hinder, delay or defraud. Ruan could not or would not come to an agreement with his wife until he knew he owed the assets to the United States. Accordingly, after considering Ruan's arguments and the relevant factors listed in § 3304(b)(2), the Court finds that the properties were transferred with actual intent to hinder, delay, or defraud and should be declared void under § 3304(b)(1)(A).

Even if actual intent was not evident, the transfers would still be due to be set aside under § 3304(b)(1)(B). As discussed above, Ruan did not receive reasonably equivalent value in exchange for the assets he relinquished to Cui in the divorce decree and Ruan had incurred debts beyond his ability to pay without those

7

assets. The FDCPA authorizes this Court to void and set aside fraudulent transfers "to the extent necessary to satisfy the debt to the United Sates." 28 U.S.C. § 3306(a). Accordingly, the transfer of property by the divorce decree and the resulting quit claim deeds should be declared void and be set aside under both §§ 3304(b)(1)(A) and (B).

## CONCLUSION

For the reasons set forth above, the division of property set forth in the divorce decree and the resulting quit claim deeds are hereby declared **VOID** and are **SET ASIDE** pursuant to 28 U.S.C. § 3306(a).

**IT IS FURTHER ORDERED**, that the United States is granted a **LIFT OF STAY to proceed with the execution**.

**DONE** and **ORDERED** this 19th day of November, 2018.

                                     /s/ Callie V. S. Granade
                                     SENIOR UNITED STATES DISTRICT JUDGE