# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 15-0088-CG-B |
| **XIULU RUAN, M.D.,** | ) ) ) ) | |

## ORDER

This action is before the Court on the United States' Motion for an Order Confirming Mortgage is VOID to Clear Title (Doc. 810), Xiulu Ruan's ("Ruan") response thereto (Doc. 814), the United States' Reply (Doc. 815), and Ruan's Surreply (Doc. 816). For the reasons explained below, the United States' motion is hereby GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2017, Ruan was found guilty of racketeering and drug conspiracies in connection with his operation of a pain clinic. (Doc. 503.) Following the return of the verdict, Ruan agreed and stipulated to a forfeiture money judgment in the amount of $5,000,000 in addition to the forfeiture of multiple assets. (Docs. 498, 500, 503). On May 31, 2017, this Court sentenced Ruan to 252 months imprisonment and to pay $15,239,369.93 in restitution and a special assessment of $1,500. (Doc. 665). On June 12, 2017, the United States filed a Notice of Lien for Fine/Restitution against Ruan in Mobile County, Alabama Probate Court

and in Milwaukee County Wisconsin Register of Deeds. (Doc. 800-2). On May 3, 2018, the United States filed a third Notice of Lien for Fine and/or Restitution in Bay County, Panama City, Florida. (*Id.*) The United States reports that Ruan has paid no funds towards restitution and has paid only $100 towards the special assessment through the Inmate Financial Responsibility Program. (Doc. 800).

On February 17, 2017, during his trial but prior to his conviction, Ruan signed a Power of Attorney ("POA") granting his sister, Xiu Oing Martinie ("Martinie"), general authority to act on his behalf pursuant to the Alabama Uniform Power of Attorney Act. (Doc. 800-3). The POA includes the following restrictive language: "An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the agent … unless I have included that authority in the Special Instructions" (*Id.* at 2). The Special Instructions state as follows: "This Power of Attorney shall not be affected by my disability, incompetency, or incapacity." (*Id.*)

On February 27, 2018, four days after his conviction, but before his sentencing and before the Notices of Liens were filed, Martinie executed a mortgage to twenty-one individuals for a total of $559,200.00 against Ruan's then-un-encumbered property located at 9073 Timbercreek Boulevard, Spanish Fort, Alabama 36527. (Doc. 800-1). One of the twenty-one named individuals was Steve Martinie ("Steve"), the husband of Martinie. (*Id.*)

On May 29, 2018, this Court issued an Order for a Writ of Execution for 15 properties that were owned either solely by Ruan or Ruan's single member LLC

(XLR Properties, LLC) or jointly by Ruan and his former wife, Ling Cui. (Doc. 772). The United States Marshal's service seized the properties and filed returns of service. (Docs. 781, 784, 790, 791, 793, 794, 795).

On November 8, 2018, the United States filed a motion to set aside the above-mentioned mortgage as a fraudulent transfer. (Doc. 800). Thereafter, Ruan responded to the motion and submitted several documents relating to the transaction. (Doc. 806). Upon review of the exhibits filed, and while the motion remained pending, the United States filed the instant motion asserting that the mortgage was void because Martinie was without authority to execute the mortgage due to the language of the POA which excluded Martinie's authority to use Ruan's property to benefit herself. (Doc. 810). The United States simultaneously filed a Motion to Stay the ruling on its previous motion to declare the mortgage fraudulent pending a ruling on the current motion.[1] (Doc. 811). Ruan filed a response (Doc. 814), the Government filed a reply (Doc. 815), and Ruan filed a sur-reply (Doc. 816).

## DISCUSSION

The Government argues that the subject mortgage is void on its face because Martinie did not have the legal authority to use defendant's property to benefit herself, or self-deal. (Doc. 810, generally). As such, the Government posits that the mortgage did not and could not have transferred any interest to either Martinie or to the other named mortgagees. (*Id*. at 8-9). In response, Ruan contends that the

---

[1] Based on the result reached in this Order, the Government's previously filed motions relating to the at issue here (Docs. 800 and 808) are MOOT.

3

mortgage is not void because Martinie did not self-deal, but alternatively, if self-dealing is determined, that the mortgage is not void as to the remaining mortgagees. (Doc. 814 at 1-4, Doc. 816). Ruan also argues that this court is without subject matter jurisdiction to determine the validity of the mortgage. (Doc. 814 at 4-7). The Government contends that jurisdiction exists and that the mortgage is not severable (Doc. 815, generally). This Court will address each argument.

**A. Jurisdiction**

In his response to the subject motion, Ruan suggests this District Court lacks subject matter jurisdiction to determine the facial validity of the mortgage at issue. (Doc. 814 at 7). Curiously, Ruan does not specifically argue that this Court does not have jurisdiction and plainly agrees that "[o]f course, the issue of enforcing a federal restitution order falls within the court's federal question jurisdiction". (Doc. 814 at 4). Instead, Ruan acknowledges the Federal Debt Collection Procedures Act (FDCPA) and then only *questions* whether or not jurisdiction exists and challenges the Government to come forward with a cited example of a similar matter being adjudicated by a federal court. (*Id.*) In reply, the Government argues that the validity of the mortgage is squarely within this Court's jurisdiction pursuant to the FDCPA.[2]

The Federal Debt Collection Procedures Act "provides 'the exclusive civil procedures for the United States' to obtain satisfaction of a judgment in a criminal

---

[2] Notably, Ruan's sur-reply is silent on the issue of jurisdiction, despite the Government addressing the issue in its reply.

4

proceeding that imposes a 'fine, assessment, penalty, [or] restitution' in favor of the United States." *United States v. Bradley*, 644 F.3d 1213, 1309 (11th Cir. 2011) (quoting 28 U.S.C. §§ 3001(a)(1), 3002(3)(B), 3002(8)). The Act provides the United States several remedies to satisfy a judgment, one of which is to obtain a writ of execution. 28 U.S.C. §§ 3202(a), 3203. The Act provides that the United States may levy only property in which a judgment debtor has a "substantial nonexempt interest." *Id*. § 3203(a). As such, the FDCPA requires the government to use reasonable diligence to identify and serve notice on any person who may have an interest in the property it targets for collection proceedings under the FDCPA. *See* 28 U.S.C. § 3202(c) (requiring the government to serve a "copy of the notice and a copy of the application for granting a remedy under this subchapter" on "each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in the property to which the remedy is directed."). To that end, the district court must determine whether the debtor has any ownership interests in the property, and the district court must determine the ownership interests of any person who moves to dissolve or modify any writ. *See U.S. v. Duran*, 701 F.3d 912 (11th Cir. 2012) (held that a district court has the authority, under the FDCPA, to determine under state law the ownership interests in property against which the United States has obtained a writ of execution to collect a judgment of restitution in a criminal action.).

While the circumstances of *Duran* may not be identical to those currently before this Court, the rationale for the Court of Appeals' holding remains applicable

5

to the case at hand. Specifically, because at issue in this action is the validity of a mortgage that determines ownership interest in a property over which the United States has obtained a writ of execution, this Court has jurisdiction to determine the ownership interest in the subject property. Ruan has submitted no case law indicating that jurisdiction does not exist under the FDCPA or that *Duran* should be distinguished from this action. Further, Ruan's argument with respect to this Court's jurisdiction suggests that federal jurisdiction would exist if the mortgagees listed on the subject mortgage were given notice such that they had an opportunity to potentially seek to object to the writ, after which this Court could then determine their property interest, to the extent that they had any interest at all. (*See* Doc. 814 at 4). However, Ruan has not provided any case law to suggest that this Court does not have the same jurisdiction before notice is given, especially when, as here, the court's decision determines not whether that mortgage is voidable, but whether it is void in its entirety, thereby not creating any property interest in the named mortgagees such that notice would be required. Accordingly, this Court finds that jurisdiction exists.

**B. Self-Dealing**

The Government asserts that the subject mortgage is void because Martinie did not have the authority to use the POA to benefit herself or self-deal, and because Alabama law prohibits self-dealing. (Doc. 810). Ruan argues no self-dealing occurred because Martinie's husband, not Martinie, was the beneficiary of the subject mortgage. (Doc. 814 at 1-2).

6

The POA attorney states as follows: "An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the agent … unless I have included that authority in the Special Instructions". (Doc. 800-3 at 2). The Special Instructions state: "This Power of Attorney shall not be affected by my disability, incompetency, or incapacity." (*Id*.) According to Martinie, the mortgage in question was executed to repay $559,200.00 to twenty-one individuals who assisted Ruan financially during his legal proceedings. There is no dispute that one of the named mortgagees was Martinie's husband and that his portion of the mortgage was $252,035.00. The only substantive question is whether Martinie engaged in self-dealing when she used her POA to execute a mortgage that secured a debt of $252,035.00 to her husband.

For legal support, the Government relies heavily on *Lamb v. Scott*, 643 So.2d 972 (Ala. 1994). In *Lamb*, a mother executed a power of attorney designating one of her daughters as her attorney-in-fact. The mother later executed a will leaving certain real property to her two daughters and step-son in equal shares. After the POA and will were executed, but before the mother died, the daughter used the POA to execute a deed that transferred her mother's interest in her real property to herself and her sister. The mother's stepson subsequently filed suit to have the deed be declared void. The Alabama Supreme Court held that powers of attorney are construed strictly, "restricting the powers to those expressly granted," and held that because the challenged power of attorney "did not specifically state that [the

7

attorney-in-fact] could convey land to herself, she was without the power to do so." *Id*. at 974. Accordingly, the mortgage was void.

Ruan's only argument that the mortgage is not void in this action is that the government has failed to provide any legal support that Martinie's grant of a mortgage to people other than herself, i.e. her husband, is "self-dealing". (Doc. 814 at 1-2). However, the factual evidence on the record submitted by Ruan supports the position that Martinie benefitted from the mortgage. Specifically, the documents filed by Ruan in response to the Government's initial motion to void the mortgage as a fraudulent transfer, includes a list of people who provided financial support to Ruan for his legal defense, including Steve Martinie *and* Xiu Qiong Martinie. (Doc. 806-2 at 1). According to the exhibit, Steve and Martinie loaned Ruan a total of $252,035.00 over three transactions from June 5, 2015 to June 16, 2015. (*Id*.) There are additionally copies of two checks and one withdrawal ticket – all signed by Martinie, alone, totaling $252,035.00. (*Id*. at 5-7). One of the two checks identifies the account holder as Martinie and none of the documents contain Steve's name or his signature. (*See Id*.). As a result, despite the fact that Martinie identified her husband, and not herself, on the mortgage, the evidence supports a finding that Martinie either solely or jointly with her husband loaned Ruan the funds and, likewise, either solely or jointly with her husband benefitted from the mortgage, resulting in self-dealing. Also telling is the fact that, in defending against the Government's position, Martinie – the person with the ability to submit evidence that she did not benefit from the mortgage (or even a portion of it) – has

8

failed to submit any evidence that she did not benefit, for example by submitting a sworn affidavit or financial evidence that the funds loaned to Ruan were not hers. This is true despite the fact that Martinie filed a "Declaration" addressing her part in executing the mortgage which makes no mention of her benefit (or lack thereof) in executing the mortgage. (*See* Doc. 806-3).

The conclusion that Martinie benefitted from the mortgage is further supported by Ruan's own argument in his sur-reply, that even if Martinie self-dealt, Steve, too, has an ownership interest in the money held in a bank account in his wife's name and therefore, owns half of the $252,035.00 loaned to Ruan (and arguably should receive that same amount per the mortgage even if the other half was self-dealing). In so arguing, Ruan asserts that Wisconsin (the Martinies' state of residence) is a "community property" state meaning Steve owns half of all marital property. However, considering the same marital property laws -- which is unnecessary per the documents discussed above -- Martinie would likewise benefit from the mortgage to her husband. Because *any* self-dealing constitutes self-dealing, the fact that Martinie may only have a 50% interest in the total amount of the mortgage issued to her husband does not remove the transaction from being one of self-dealing. Accordingly, the mortgage as to her husband constitutes a benefit to Martinie which she was not authorized to grant per the POA or under Alabama law. As a result, the mortgage is void.[3]

---

[3] Ruan makes no argument that the mortgage would not be void as to Martinie should this Court determine that the execution of the mortgage involved self-dealing, and this Court finds no legal basis for such a position.

9

C.  **Severability**

Ruan alternatively argues that if the mortgage is void as to Martinie, it should be severable and remain valid as to the other twenty individuals who benefitted because Martinie had the power to issue such a mortgage for their benefit and Ruan intended that his family and friends who financially contributed to his defense be made whole by the repayment. (Doc. 814 at 2-4). For legal support, Ruan relies on *Lamb, supra.* Specifically, Ruan argues that the court in *Lamb* specifically addressed the deed at issue first with respect to the attorney-in fact (which was void due to self-dealing) and *then* separately addressed that same deed with respect to the other grantee based on the intent of the person executing the POA. *Id*. Despite the *Lamb* court finding that the deed was also invalid as to the non-attorney in fact, Ruan argues that in this action it is clear that he intended to repay those who loaned him money and, therefore, his intent establishes that the mortgage is valid with respect to the remaining mortgagees. *Id*.

Ruan's position is not compelling. First, in order for the mortgage to be severable, it must to be voidable, not void. If void, it is a nullity. This distinction was squarely addressed in *In re Shelton*, 2018 WL 5098814 (N.D. Ohio October 17, 2018), cited by the Government. While *In re Shelton* is factually distinguishable, its analysis of Alabama property law, specifically *Lamb*, is on point. Specifically, that court stated as follows:

> Conveyances that are merely voidable are "subject to be set aside and cancelled at the suit of" a party with a superior interest. *See Ham v. Blankenship*, 194 F.2d 430, 432 (5th Cir. 1952). When an act is void, however, it is "entirely destitute of legal effect." *Ex Parte Banks*, 185

10

> Ala. 275, 279, 64 So. 74 (Ala. 1913). The Alabama Supreme Court in *Banks* admonished that "judges ... have frequently used the words 'voidable' and 'void' indiscriminately, when referring to contracts," *id*. at 280, 64 So. 74, but this Court is not prepared to conclude that the Alabama Supreme Court in *Lamb* confused the two words and their meaning. Because the Alabama Supreme Court in *Lamb* described deeds given by an attorney-in-fact to herself without express authority to do so as "void," 643 So.2d at 974, this Court concludes that the law of Alabama holds such purported deeds to be legal nullities.

*In re Shelton*, at *763 (N.D. Ohio October 17, 2018). Because Martinie did not have the authority to use the POA to self-deal, the mortgage is a legal nullity.

Nevertheless, even assuming Ruan's interpretation of *Lamb* is correct and requires this Court to separately consider Ruan's intent to establish the validity of the mortgage as to the other mortgagees, the result would be the same. While, the *Lamb* court examined the intent of the deceased to determine the validity of the deed with regard to the non-attorney-in-fact, it found that the deed was invalid because had the deceased wished to deed her property to the non-attorney in fact, she could have done so at the time of executing the POA, or even later when executing her will. Despite Ruan's position in his pleadings with regard to his intent, the Declaration previously submitted by Martinie states that she is the sister of Ruan, that she was given POA, that she caused the subject mortgage "to be granted in favor of several people who had lent money to Xiulu Ruan to help cover the costs of his criminal defense" and that "[t]he decision to grant this mortgage was mine, and it was made for the sole purpose of ensuring that the aforementioned loans were repaid as promised." (Doc. 806-1 at 1). The Declaration goes on to specifically state that "[Martinie] was not acting at the direction of Xiulu Ruan

11

when I decided to grant this mortgage." *Id*. Coupled with the fact that the records pertaining to the loans given by the other mortgagees make no mention of a mortgage or repayment plans (other than the promise to repay by December 2018) Martinie's Declaration contradicts Ruan's alleged intent. Further, the POA contradicts that Ruan intended to issue the mortgage though his attorney-in-fact for the benefit of those who loaned him money. Similar to the circumstances in *Lamb*, had Ruan intended his property to be used to repay those individuals who loaned him money for his legal defense, he could have executed a mortgage to that effect at the time he executed the POA. Moreover, had he intended for Martinie to be able to execute such a mortgage on his behalf for such a purpose, he could have likewise removed the restriction from the POA which prevented Martinie from benefiting from the use of the POA - especially given that over half of the money to be repaid was loaned to him from Martinie or Martinie and her husband. He did not. Thus, the only intent that can be surmised is that at the time of executing the POA, Ruan did not intend for Martinie to be able to execute a document as his attorney-in-fact that would benefit her. The fact that the document at issue also benefitted others does not overcome the express restriction of the POA. As a result, this Court finds that Martinie was without authority to execute the mortgage to the other named mortgagees. Furthermore, Ruan has not pointed to any case other than *Lamb* that suggests this Court could or should void a portion of the mortgage that was executed without authority but validate another portion. Ruan also fails to present legal support, beyond *Lamb*, that this Court should modify or reform the subject

mortgage based on the subject circumstances. Such a modification would essentially result in this Court creating a new mortgage document for a new amount and for a revised group of individuals. This Court is not inclined to do so.

## CONCLUSION

For the reasons set forth above, the United States' Motion for an Order Confirming Mortgage is VOID to Clear Title (Doc. 810) is **GRANTED**, and the Motion to Void Mortgage as a Fraudulent Transfer (Doc. 800) and Motion to Compel (Doc. 808) are **MOOT**.

**DONE** and **ORDERED** this 4th day of April, 2019.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE