[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11508
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00088-CG-B-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

XIULU RUAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(January 8, 2020)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Xiulu Ruan, a federal prisoner currently serving a 252-month term of imprisonment, appeals the district court's order voiding the mortgage on one of his properties. After careful review, we reverse in part and vacate in part and remand to the district court.

## I.

In 2015, Ruan was indicted on racketeering and drug conspiracy charges in connection with his operation of a pain clinic. In 2017, before Ruan was convicted, he signed a power of attorney ("POA") granting his sister, Xiu Oing Ruan Martinie ("Mrs. Martinie"), general authority to act on his behalf pursuant to the Alabama Uniform Power of Attorney Act. The POA includes the following language: "An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the agent . . . unless I have included that authority in the Special Instructions." The Special Instructions state: "This Power of Attorney shall not be affected by my disability, incompetency, or incapacity."

Following the return of the verdict, Ruan stipulated to a forfeiture money judgment in the amount of $5,000,000 in addition to the forfeiture of a number of assets. The district court ultimately sentenced Ruan to 252 months imprisonment

and ordered him to pay $15,239,369.93 in restitution as well as a special assessment of $1,500.

After Ruan's conviction, but before he was sentenced, Mrs. Martinie executed a mortgage (the "Mortgage") to twenty people for a total of $559,200.00 against Ruan's then-unencumbered property located on Timbercreek Boulevard in Spanish Fort, Alabama. Steve Martinie ("Mr. Martinie"), Mrs. Martinie's husband, was one of those receiving a mortgage interest in the property.

The district court entered the final order of forfeiture and issued an Order for a Writ of Execution for 15 properties owned by Ruan in 2018. The Timbercreek Boulevard property was on the list. The United States Marshals Service seized the property and filed a return of service. The government then sought to set aside the Mortgage on the Timbercreek Boulevard property as a fraudulent transfer. Ruan responded to the motion, arguing, among other things, that the Mortgage was not a fraudulent transfer because it was given to "ensure loans previously incurred to pay for legal fees were secured." He submitted evidence that those loans were used almost exclusively to pay his defense counsel. Based on this evidence, the government filed another motion requesting an order confirming the Mortgage was void and permitting the sale of the Timbercreek Boulevard property. The government argued that the Mortgage was void because, under the terms of the

POA, Mrs. Martinie did not have authority to execute the Mortgage and by granting the Mortgage to her husband, Mrs. Martinie engaged in self-dealing.

The district court granted the government's motion and held that the evidence Ruan submitted showed Mrs. Martinie benefitted from the Mortgage and therefore engaged in self-dealing in violation of the POA. It explained that because Mrs. Martinie was not authorized to grant the Mortgage, the Mortgage was null and void and Mr. Martinie's share of the Mortgage was not severable. Ruan timely filed his notice of appeal, and he raises two issues: first, whether the district court erred in holding the Mortgage was void, as opposed to voidable, under Alabama law; and second, whether Ruan's ratification of the Mortgage rendered Mrs. Martinie's actions consistent with her authority under the POA.

## II.

We review a district court's factual findings for clear error and review de novo the application of law to those facts. Lykes Bros. v. U.S. Army Corps of Engineers, 64 F.3d 630, 634 (11th Cir. 1995). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with the definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted).

### III.

In order to determine whether the Mortgage is void, we must first decide what authority the POA granted to Mrs. Martinie and whether, when she granted the Mortgage, she exceeded those powers.  See Dillard v. Gill, 166 So. 430, 433 (Ala. 1936) ("[P]owers of attorneys will be given strict construction, restricting the powers to those expressly granted.").  As set out above, the POA included this language: "An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the agent or a person to whom the agent owes an obligation of support."

The plain language of the POA prohibits Mrs. Martinie from using Ruan's property to benefit a person to whom she owes an obligation of support—namely, her husband.  Under Alabama law, an "obligation of support" or "support obligation" generally refers to domestic obligations, like obligations one spouse owes to the other, or the obligations a parent owes to her child.  See, e.g., 1 Judith S. Crittenden & Charles P. Kindregan Jr., Alabama Family Law § 20:4 (July 2019 Update) ("A domestic support obligation is one which is . . . owed to or recoverable by . . . a spouse"); see also Glenn v. Glenn, 626 So. 2d 638, 639 (Ala. Civ. App. 1993) (upholding alimony and child support payments because there was no material change in circumstances sufficient to modify "support obligations").

5

This being the case, Mrs. Martinie exceeded the scope of the authority granted to her under the POA.

## IV.

We next must determine whether the Mortgage is void—i.e., a legal nullity—or voidable—i.e., capable of being affirmed or rejected at the option of the mortgagees. Ex parte Banks, 64 So. 74, 75 (Ala. 1913). Alabama courts have not specifically addressed the question of whether, when an attorney-in-fact uses the principal's real property to pay off debts the principal owes to the attorney-in-fact, the attorney-in-fact's spouse, and other third parties, that conveyance is entirely null. However, Alabama has generally made clear that breaches of fiduciary duty, including self-dealing, are voidable. See Bay Shore Props., Inc. v. Drew Corp., 565 So. 2d 32, 34 (Ala. 1990) (describing "well settled" law that breach of fiduciary duty results in voidable transaction); Myers v. Ellison, 31 So. 2d 353, 355 (Ala. 1947) ("[A]cts of an agent which tend to violate this fiduciary obligation are prima facie voidable." (emphasis added)); Pike v. Reed, 47 So. 3d 253, 260 (Ala. Civ. App. 2009) (quoting Myers, 31 So. 2d at 355) (same); see also Sevigny v. New S. Fed. Sav. & Loan Ass'n, 586 So. 2d 884, 887 (Ala. 1991) ("The principal-agency relationship [created when one accepts a power of attorney] is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing.").

We recognize there is a "lack of preciseness and different shades of meaning involved in the use of the word 'void,' which causes confusion . . . generally," Ham v. Blankenship, 194 F.2d 430, 432 (5th Cir. 1952) (footnote omitted), including in interpreting Alabama courts' decisions. See Banks, 64 So. at 75 (noting that Alabama "judges and text-book writers have frequently used the words 'voidable' and 'void' indiscriminately"). Yet Alabama courts have generally described breaches of fiduciary duty as being void "at the option" of the non-guilty party—a hallmark quality of a voidable contract. Banks, 64 So. at 75 (quotation marks omitted) (describing difference between void and voidable contracts); Calloway v. Gilmer, 36 Ala. 354, 357–58 (1860) ("No principle is more firmly established . . . than that a purchase by a trustee, for his own benefit, at a sale of the trust property, is voidable at the option of the cestui que trust."). As our predecessor court explained, we think that when an attorney-in-fact breaches her fiduciary duty, courts have "ruled only that the illegal contract was 'void' in the sense that the Court would not lend its aid to a guilty party seeking to enforce it." Ham, 194 F.2d at 431.[1] Thus, the one-sided illegal conveyance by Mrs. Martinie renders the Mortgage voidable and subject to be set aside and cancelled pursuant to

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

a suit brought by the mortgagees.  See Myers, 31 So. 2d at 356 (holding that plaintiff had a right to rescind in light of "prima facie voidableness of the sale").

The district court relied on In re Shelton, 593 B.R. 755 (Bankr. N.D. Ohio 2018), to hold that, because Mrs. Martinie "did not have the authority to use the POA to self-deal, the mortgage is a legal nullity."  The district court concluded the Mortgage was not voidable based on Shelton's analysis of Lamb v. Scott, 643 So. 2d 972 (Ala. 1994):

> Conveyances that are merely voidable are subject to be set aside and cancelled at the suit of a party with a superior interest.  When an act is void, however, it is entirely destitute of legal effect.  The Alabama Supreme Court in Banks admonished that judges have frequently used the words "voidable" and "void" indiscriminately, when referring to contracts, but this Court is not prepared to conclude that the Alabama Supreme Court in Lamb confused the two words and their meaning.  Because the Alabama Supreme Court in Lamb described deeds given by an attorney-in-fact to herself without express authority to do so as void, this Court concludes that the law of Alabama holds such purported deeds to be legal nullities.

593 B.R. at 763 (alteration adopted and quotations marks and citations omitted). But the Shelton court looked only to Lamb and did not consider other long-established Alabama precedent.  Our review of this precedent leads us to conclude that the Alabama Supreme Court indiscriminately used the word "void" in Lamb when, in fact, it was in keeping with the court's precedent to mean "voidable." And because the Mortgage is voidable at the option of the mortgagees, we also hold it is severable.  Cf. Howard v. City of Bessemer, 114 So. 2d 158, 163 (Ala.

8

Ct. App. 1959) (holding that valid portions of ordinance were severable from those alleged to be invalid).  We must therefore analyze the validity of the conveyance to Mr. Martinie separately.  See Banks, 64 So. at 75 (noting "innocent third persons, acting in good faith, may acquire rights" under voidable contracts).

## V.

In order to decide the remaining question—whether the Mortgage is void as to Mr. Martinie—we first must determine whether Mrs. Martinie's actions constitute self-dealing.  See Myers, 31 So. 2d at 355 ("In the absence of full knowledge or consent on the part of his principal, an agent . . . may not, either directly or indirectly, himself become the purchaser or lessee." (quotation marks omitted)).  This requires a factual analysis.  See Lamb, 643 So. 2d at 973–74.  In Lamb, the Alabama Supreme Court analyzed the validity of a deed executed by Lamb to herself and her sister, Heliste.  The court ultimately held that Lamb did not have the power to convey land to herself because the "power of attorney did not specifically state" as much.  Neither, according to the court, did she have the power to convey land to Heliste because the principal "clearly expressed her intent" regarding how to convey the land.  Id.  Applying that analysis to this case thus requires a determination of whether Mrs. Martinie used her power for the sole benefit of Ruan and used "it in a manner consistent with the purposes of the agency

9

relationship created by the power of attorney." Id. at 974.  If so, Mrs. Martinie did not engage in self-dealing.

The self-dealing analysis requires looking at the "true intent" of the principal.  Miller v. Jackson Hosp. & Clinic, 776 So. 2d 122, 124 (Ala. 2000).  In Miller, the Alabama Supreme Court held that the attorney-in-fact did not engage in self-dealing when he filed a personal injury action captioned "Charles Miller, on behalf of Roy Lee Miller v. Jackson Hospital and Clinic."  Id. at 123, 125.  The Miller court distinguished Lamb, noting that in that case, "the self-dealing appeared to go against the true intent of the donee."  Id. at 124.  In deciding Miller, it "decline[d] the defendants' request to impose the requirement of specificity even in instances where there has been no self-dealing," because doing so "would unnecessarily inhibit the utility of a durable power of attorney."  Id. at 125.

Because the district court held the Mortgage was a nullity, it did not examine Ruan's "true intent" in granting Mrs. Martinie the POA.  Rather, the district court simply regarded Mrs. Martinie as having engaged in self-dealing because her husband was one of the mortgagees.  The district court's conclusion was based on the evidence before it: (1) Mrs. Martinie signed two checks and one withdrawal slip used to pay Ruan's legal defense, (2) one of the two checks identified Mrs. Martinie as the account holder, and (3) Mr. Martinie's name or signature were not on any of the payments.

After reviewing all of the evidence, we conclude the district court properly found that Mrs. Martinie benefitted directly from the grant of the Mortgage. Both Mr. and Mrs. Martinie are included in the list of people who loaned Ruan money for his legal defense. Ruan executed a promissory note to "Steve and Xiuqiong Martinie" reflecting $50,000 of the $252,035 they loaned him. Likewise, based on the plain language of the POA, Ruan did not grant Mrs. Martinie the authority to self-deal. See Ala. Code § 26-1A-201(b) & Alabama Comment (noting the change to section (b) "was to clarify that the potentially self-dealing types of transactions . . . will not be inferred from general language"). However, the record before us does not support a conclusion that Mrs. Martinie's actions constituted self-dealing. In other words, simply because Mrs. Martinie benefitted from the Mortgage does not mean she acted "in a manner [in]consistent with the purposes of the agency relationship created by the power of attorney." Lamb, 643 So. 2d at 974. Indeed, it is unclear whether Ruan intended Mrs. Martinie to have the power to discharge the debt Ruan owed to Mr. and Mrs. Martinie. Cf. Brooks v. Ward, 254 So. 2d 175, 179 (Ala. 1971) ("As a general rule a debtor may effectively pay and discharge, in whole or in part, his debt to join[t] creditors by payment to one of the creditors.").

Because the record before us has not been developed as to Ruan's intent in granting Mrs. Martinie the power of attorney,[2] remanding this case is necessary to permit the factual inquiry described in Lamb and Miller.  It may be, as the district court found, that by granting the Mortgage to Mr. Martinie, Mrs. Martinie did not act consistently with what Ruan intended to be the purpose of the agency relationship.  Nevertheless, whether Mrs. Martinie granted the Mortgage for Ruan's benefit and in a manner consistent with the purposes of the POA may turn on Ruan's purported ratification of the Mortgage.  Miller, 776 So. 2d at 124–25; Lamb, 643 So. 2d at 973–74.  In any event, that determination must be made by the district court in the first instance.

We therefore REVERSE in part and VACATE and REMAND in part.  We reverse the district court's holding that the Mortgage was void and remand to the district court to determine whether the conveyance to Mr. Martinie was consistent with Ruan's true intent.

---

[2] The record reflects that Ruan was "previously silent" regarding his intent, but that he now claims Mrs. Martinie acted "with his consent," or, at the very least, that he ratified the Mortgage.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 08, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 19-11508-DD
Case Style: USA v. Xiulu Ruan
District Court Docket No: 1:15-cr-00088-CG-B-2

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bradly Wallace Holland, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion