1          IN THE UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF ALABAMA

3          MOBILE DIVISION

4

10:13:46   5

6    UNITED STATES OF AMERICA,          )
                                        )
7          Plaintiff,                   )
                                        )
10:13:46   8    versus                  )    Case No. 15-cr-88
                                        )
9    XIULU RUAN,                        )    RESENTENCING
                                        )
10         Defendant.                   )    JULY 17, 2024
10:13:20        _____)

11

12          TRANSCRIPT OF PROCEEDINGS

13      BEFORE THE HONORABLE JUDGE CALLIE VS GRANADE

14          UNITED STATES DISTRICT JUDGE

10:13:26   15

16

17

18
10:13:26   19

20    SUSAN A. ZIELIE, FCRR, CVR-CM-S
      FEDERAL OFFICIAL STENOGRAPHIC COURT REPORTER
10:13:26   21    United States District Court
      Southern District of Alabama
22    155 Saint Joseph Street
      Mobile, Alabama 36602
23    251-694-4674
10:13:26        susan_zielie@alsd.uscourts.gov
24

25

1

2                              APPEARANCES

3

4    For Plaintiff/USA:

10:13:26   5    CHRISTOPHER JOHN BODNAR, AUSA

6    SCOTT ALAN GRAY, AUSA

7

8    For Defendant COUCH:

9    JEFFREY P. DOSS, ESQ.

10:13:22   10    STEVE MARTINIE, ESQ.

11

12

13

14

10:13:22   15

16

17

18

19

10:13:00   20

21

22

23

24

10:13:00   25

1          MOBILE, ALABAMA, WEDNESDAY, JULY 17, 2024

2                        11:10 A.M.

3          COURTROOM DEPUTY:  Case set for resentencing in the

4     United States of America versus Xiulu Ruan, Criminal Case

10:21:38    5     Number 15-88.

6          Is the government ready to proceed?

7          ATTORNEY BODNAR:  The United States is ready, Your

8     Honor.

9          COURTROOM DEPUTY:  Is the defendant ready?

10:21:42    10     ATTORNEY DOSS:  Yes, ma'am.

11          THE COURT:  Counsel, have you been over the

12     Presentence Report with your client?

13          ATTORNEY DOSS:  Yes, Your Honor.

14          THE COURT:  And can you tell me what objections

10:21:54    15     remain outstanding?

16          ATTORNEY DOSS:  Yes, Your Honor.  And I don't want

17     to belabor that everything we've raised.  To the extent they

18     weren't amended in the PSR, we stand on those objections.

19     There are a few that I just want to highlight for Your

10:22:06    20     Honor's consideration.

21          THE COURT:  All right.

22          ATTORNEY DOSS:  The first is guidelines adjacent.

23     It doesn't actually affect the guideline range but it's

24     relative to the sentencing calculation.  And that is on

10:22:16    25     paragraphs 108, 111, 113, 114, 116, and 117, and those all

10:22:38

1  concern Count 3's statutory enhancement for the 40 grams of

2  fentanyl, which the Eleventh Circuit in the first *Ruan*

3  decision said that they didn't think that the jury was,

4  quote, sufficiently presented with the specific data showing

5  that these five patients received 8.83 grams of fentanyl.

6  Ultimately, the Eleventh Circuit found it was

7  harmless error because the Court sentenced within that range

8  so that the enhancement didn't matter. We think, just to be

9  on the correct side, the enhancement shouldn't apply for

10:22:54

10  purposes of the sentencing calculation, Your Honor.

11  THE COURT: All right. What is the government's

12  position on that?

13  ATTORNEY BODNAR: The United States has no

14  objection, Your Honor.

10:23:10

15  THE COURT: All right.

16  ATTORNEY DOSS: On page 7 of the amended PSR, and

17  that's document 989, there's still a reference to Count 16.

18  I know that Probation worked hard to get rid of all of the

19  Count 16 references; but, in paragraph 3, there still remains

10:23:28

20  a reference to Count 16.

21  THE COURT: All right. I think that that should be

22  corrected. Well, to the extent that any of this remains that

23  shouldn't be in there, of course, I will not take that into

24  account. I don't know that that actually matters in terms of

10:23:48

25  physically correcting the Presentence Report.

1          ATTORNEY DOSS:  Yes, Your Honor.

2          There was language in paragraph 57.  This was the

3    same language that Dr. Couch's counsel raised concerning

4    reference to deceased patients.  And my understanding was

10:24:06    5    that there would be -- that would be removed, and I think the

6    government was okay with removing that.

7          ATTORNEY BODNAR:  Yes.  Not only do we not object,

8    we agree with the removal of that.

9          THE COURT:  All right.  Well, let me ask you this:

10:24:18   10    If we remove that language and send the new Presentence

11    Report to the Bureau of Prisons, is that going to have any

12    affect?

13          ATTORNEY BODNAR:  I don't know.  But this is

14    something that Mr. Soto and I have been working with.  And,

10:24:32   15    when Melissa Rankin was still with the probation office,

16    all of us agreed and tried to get a new version to BOP.  But,

17    if BOP does anything differently with this -- we want to make

18    sure that neither defendant is penalized for something that

19    we opted not to go to trial with, did not put on any evidence

10:24:48   20    of, and he shouldn't be penalized for that.

21          THE COURT:  Well, I agree with that.

22          So we can do that.  So we will make that actual

23    correction to it and send a copy to BOP and see what happens.

24    Maybe nothing but we'll see.

10:25:06   25          All right.  Go ahead.

1          ATTORNEY DOSS:  Thank you, Your Honor.

2          And, as mentioned, we objected to the enhancements,

3     and we've set out our reasons and our objections as well as

4     our sentencing memorandum.

10:25:14    5          For example, the adjustment for obstruction of

6     justice.  I understand the Court's ruling today as

7     articulated during Dr. Couch's sentencing hearing so I'm not

8     going to replow old ground.

9          THE COURT:  I appreciate that.  And I will just

10:25:28   10     simply restate nothing has changed in my regard of that so it

11     will still apply.  But I appreciate the objection.

12          ATTORNEY DOSS:  In addition that with the drug

13     quantity, again, we've set out our objections in our

14     objections to the PSR as well as in the sentencing

10:25:42   15     memorandum.  I don't want to retread all of that ground, with

16     one exception, if the Court would permit me.

17          THE COURT:  Go ahead.

18          ATTORNEY DOSS:  I do think that the Supreme Court's

19     decision in *Ruan* did affect perhaps how the drug calculation

10:26:00   20     should be considered for purposes of the guidelines range.

21     That is something new in the sense that, when the Court

22     initially sentenced these two defendants, it did so with the

23     benefit of the Eleventh Circuit precedent that existed at

24     that time.  We now know, through the Supreme Court's

10:26:14   25     resolution of the circuit split, that it's not just an

objective standard, it is a subjective standard to show a

violation of the Controlled Substances Act.

We think that's important.  Extrapolations may be

possible if it is purely an objective standard.  If you have

a sufficient representative sample of data and you can show

that that typically deviated from a standard of care, then

perhaps you can extrapolate.  That may be possible.  But the

question is whether the defendant acted subjectively, with

knowledge of wrongdoing, that it substantively believed that

the dispensation of the medication or the prescription of the

medication was outside the usually course and not for a

legitimate purpose, extrapolations and estimates become

attenuated, not conservative -- which is what the Eleventh

Circuit has advised they must be -- we do think that Supreme

Court's decision changed the analysis in that regard.  It

casts doubt on extrapolations in the abstract, without

consideration of the specific types of offenses and evidence

put at trial.

It's one thing for the Court to consider the

specific prescriptions presented at trial, take into account

the defendant's *mens rea* with respect to those prescriptions.

But it would be another, we think, to extrapolate from that a

non-representative sample, not even a random sample, to

conclude that approximately 10.6 percent of all prescriptions

were prescribed with subjective criminal intent, and we do

10:28:02

10:28:24

10:28:46

10:29:02

10:29:14

1  this think that that is a step too far in light of the

2  Supreme Court's decision in *Ruan* II.  And we've noted that

3  position in our sentencing memorandum, but I wanted to

4  highlight it because I do think that is a new situation for

5  the Court to consider.  And, in fact, we cited the case from

6  the Third Circuit, which was decided after *Ruan* II, that was

7  *United States versus Titus*.  And that was a case where the

8  Court reversed the drug quantity calculation, and the

9  rationale for that decision was there are -- no estimate is

10  needed.  The universe of unlawful drugs was known.  It was a

11  doctor case.  And so an estimate and extrapolation was

12  unnecessary.  Instead, the defendant should be based on what

13  the evidence was at trial in light of the prevailing

14  standards for the CSA and that there was no need for an

15  estimation.  And we submit that the same logic applies to

16  this case, and that sort of estimation is unnecessary in

17  light of the Supreme Court's recent decision.

18         THE COURT:  Well, I think that is certainly true in

19  regard to the substantive counts if there was proof enough.

20  But I disagree as to the conspiracy count.

21         But let me hear what the government's take on that

22  is.

23         ATTORNEY GRAY:  Just briefly, Your Honor.  And I

24  think I understand the defendant's argument, which is,

25  essentially, that *Ruan* -- *Ruan* being the supreme court case

1    -- changed the standard for distribution.

2    However, as the Court acknowledged, number one, the

3    conspiracy counts are still good law.  Number two, now, at

4    sentencing, the standard is lower, it's a preponderance

10:29:28    5    standard.  And, as the Court has acknowledged, when it

6    conducts a de novo review, it can consider the trial

7    evidence.

8    And the United States' estimates -- which went

9    down, I believe, to 10.6 percent were -- as I believe the

10:29:44    10    Court noted and the United States emphasized -- consecutive

11    estimates.  And so the United State' estimates already took

12    into account the potential ambiguities that might exist and

13    that these estimates were not based on looking at is

14    prescription A wrongful or not, but drawing extrapolations

10:30:02    15    based on the conduct as a whole.

16    Just for clarity of the record, I would note it's

17    document 642, page 7, of the original United States'

18    sentencing memorandum that set this out.  And so the United

19    States submits that those estimates remain appropriate for

10:30:18    20    purposes of the drug quantity.

21    THE COURT:  Okay.  Well, I agree with that

22    estimate, and so I overrule that objection to the PSR.

23    ATTORNEY DOSS:  Understood, Your Honor.

24    THE COURT:  Next.

10:30:32    25    ATTORNEY DOSS:  This may also be just a cosmetic

1    change, but just to the extent that BOP considers such an

2    issue.  On paragraph 86, it describes Dr. Ruan as a 54 year

3    old.  He's actually 61 at this point.

4        THE COURT:  Everyone ages, that's for sure.

10:30:54    5        I think the Bureau of Prisons -- their records know

6    how old he is.

7        ATTORNEY DOSS:  I would hope, Your Honor.

8        THE COURT:  I'll note that objection.

9        ATTORNEY DOSS:  And, again, we rest on our

10:31:06    10    objections as stated in writing with respect to the PSR and

11    in our sentencing memorandum.

12        THE COURT:  All right.  Well, as I said before, I

13    find the total offense level is 41, with a Criminal History

14    category of 1.  Are there any further objections to that?

10:31:26    15        ATTORNEY DOSS:  Nothing.

16        ATTORNEY BODNAR:  Not from the United States.

17        THE COURT:  And that leaves a Sentencing Guidelines

18    range of 324 months to 405 months.

19        I'm happy to hear whatever else you want to

10:31:38    20    present.

21        I did get this lengthy order in the case that was

22    submitted by the Physicians Against Abuse in the cover

23    letter.  I haven't actually read the entire case but I get

24    the gist of it.

10:32:02    25        Is there anything else you want to say about that

or anything else?

ATTORNEY DOSS:  Briefly, Your Honor.

First, I think this is the third time you've had the sentencing hearing here, so we are not going to replow old ground.

I just want to note, you've heard previously from Dr. Ruan.  You've heard previously from Dr. Ruan's supporters, family, friends.  We readopt all that for your consideration to take into account as you're fashioning a sentence here.

There are a few points that I do want to emphasize for Your Honor's consideration.

One thing that has changed since the very first time you sentenced Dr. Ruan is we have a much more robust universe in terms of sentences for comparison purposes, and there were a few that we included in our sentencing memorandum but I wanted to highlight for the Court's consideration today that I thought were particularly helpful.

The first was US versus Stehl -- and that's S-T-E-H-L -- from the middle district of Alabama.  That was a case that was pending before Judge Moorer while he was still at the Middle District.  In that case, what was particularly telling was that the defendant, a doctor, was convicted of over 100 counts, including 94 counts of substantively violating the CSA.  Probation calculated -- and the Court

agreed -- that the Sentencing Guidelines range would have

authorized 360 months to life imprisonment.  Almost identical

to the sentencing guideline range that the Court initially

calculated back in 2017 for Dr. Ruan and Dr. Couch.  Judge

10:33:42  Moorer, during the sentencing hearing, observed that the

facts of the case were sufficiently heinous to justify a life

sentence.  Despite the facts justifying a life sentence,

Judge Moorer nevertheless varied downward and imposed a

sentence of 15 years.

10:34:02         After *Ruan* II was decided by the Supreme Court, it

called into question every one of those convictions; and,

rather than retry them, the defendant and the government

entered into a resentencing agreement.  A new sentence was

imposed of 96 months.  That was just within the past year

10:34:22  when that happened, Your Honor.

         Some other cases that have recently happened,

Dr. Bobmanuel from the Southern District of Texas, he was a

pharmacist, and his offense level was 42.  The district court

nevertheless sentenced him to 14 years, and that was for

10:34:46  illegally distributing 160,000 opioid pills.

         Dr. Stegawski from the Southern District of Ohio

sold prescriptions, unnecessarily.  The guidelines range in

that case was 293 months to 365 months.  The district court

nevertheless varied downward and imposed a sentence of 13

10:35:08  years.

1        Dr. Mirilashvili from the Southern District of New

2   York, that was a case where the guidelines range was 292 to

3   365 months.  The district superior court nevertheless

4   sentenced to 13 years.

10:35:26   5        And, finally, Dr. Lightner from the Southern

6   District of Texas ran a pain clinic and prescribed 600,000

7   pills in exchange for cash.  The Southern District of Texas

8   imposed a sentence of seven years in prison, even though the

9   guidelines range was 360 month to life, just as is,

10:35:48   10  initially, when the Court sentenced in this case.

11       What these cases now tell us is that, though these

12  are serious offenses -- no one questions that -- the

13  guidelines ranges for these offenses, district courts seem to

14  believe, as this Court did when it first sentenced Dr. Ruan

10:36:06   15  and Dr. Couch, that the guidelines are too high and they

16  don't take into account the realities of these cases.

17       What is more, with these particular cases that I've

18  cited for Your Honor, these were pure undeniable pill mills,

19  selling prescriptions for cash.  There were all sorts of

10:36:24   20  shady transactions.

21       We can't run away from the convictions that we have

22  in this case, and we acknowledge them for purposes of the

23  sentencing hearing.  But as Your Honor heard during the seven

24  weeks of this trial, this was not a pill mill like those.

10:36:40   25  This was a case where the clinic helped lots of patients.

1      That's undeniable.

2              We included in our sentencing memorandum a summary

3      of the patients pertinent to Dr. Ruan.  I know, after seven

4      years, some of the details for me were fuzzy, so I thought it

10:36:56  5   might help the Court if we went through and we highlighted

6      some of those patients, just to emphasize what was actually

7      shown about them.

8              Admittedly, the government targeted certain

9      prescriptions that Dr. Ruan wrote for those patients.  But we

10:37:08  10  also learned at trial was, when the entire patient file was

11     considered, there was good medicine being practiced.  There

12     was help.  There were opioid rotations.  There were

13     treatments other than opioids.  There were efforts at getting

14     people off of medication.  That's what we could see from

10:37:28  15  those patient files.  There's no doubt that the government

16     challenged certain prescriptions within those patient files

17     but this was not a clinic where people were running in,

18     paying cash in the back and getting a prescription and going

19     -- like some of these other case -- where you are seeing

10:37:48  20  160,000 illegally-distributed pills or 10,000 medically

21     unnecessary prescriptions, or illegal -- 600,000 illegal

22     pills being distributed.  That's not the type of case that we

23     saw here.

24             Yet, each of those doctors received significantly

10:38:08  25  less of a sentence than Dr. Ruan received.  And that is one

of the 3553 factors that we think is particularly important

at this stage and something that is new for the Court to

consider, because we do have a much more robust universe of

cases that the Court can compare, this one to others. Those

10:38:28  cases involved trials. They involved convictions. They did

not involve Plea Agreements. And they involved comparable

and sometimes more extreme Sentencing Guidelines; yet, lesser

sentences. And, for that reason, we think Dr. Ruan -- this

Court should vary downward and impose a lesser sentence than

10:38:46  it did the first time around with respect to Dr. Ruan. In

those cases that we've summarized in the sentencing memo, the

range was seven to 15 years, and those were undisputed pill

Mills. It was nothing like what PPSA was doing. And, if

seven to 15 years is a reasonable sentence for an undisputed

10:39:08  pill mill, true cash options, cash in change for prescription

operations, then what Dr. Ruan should be sentenced to, we

submit, should be less than that. We understand the Court

may disagree on that point, but we submit it should be less.

If the reasonable range for a pill mill doctor is 17 to 15

10:39:24  years, Dr. Ruan was not a pill mill doctor, he should be

sentenced to less.

        There was also a kickback scheme involved in this

case. There's a comparator that the Court can consider when

fashioning a sentence. The Insys folks who were at the heart

10:39:38  of scheme alleged in this case have all now been convicted

1    and sentenced.  We know what their sentences are.

2         Your Honor may recall John Kapoor.  He was the

3    so-called kingpin of the Insys conspiracy.  He was at the

4    head of the Insyst.  He went to trial and contested his

10:39:58  5    charges.  He was convicted.  The district of Massachusetts

6    sentenced him to five and a half years.

7         If you total up all up the sentences for all of the

8    Insys folks who were convicted, it's still less than

9    Dr. Ruan's conviction.  And, again, we think that's a new

10:40:16  10    data point for the Court to consider in fashioning a

11    sentence, how those types of cases evolved.

12         And we also acknowledge that there are fraud counts

13    in this case, and that should be taken into account as the

14    Court is fashioning sentence here.  But we've already heard

10:40:32  15    of Elizabeth Holmes and sending her cohort who perpetrated

16    the Theranos conspiracy.  In that particular case, those two

17    were sentenced to between 10 and 15 years in prison, and it

18    involved an over $100 million conspiracy.

19         And so we think, based on trends that we're seeing

10:41:00  20    with the district courts, the key 3553 factor is to fashion a

21    sentence that doesn't create unnecessary or unreasonable

22    sentencing disparities.  And we do think that's an important

23    consideration for Your Honor as you're considering this anew,

24    as you indicated.

10:41:10  25         In addition, Your Honor, Dr. Ruan, as I mentioned,

1   he's 61 years old.  He's spent a little over seven years in

2   prison.

3               The other 3553 factors that are critical for the

4   Court's consideration is specific and general deterrence.

10:41:24   5               I can assure Your Honor that there is specific

6   deterrence here.  Dr. Ruan has lost his medical license.

7   PPSA has been shut down.  There will be absolutely no

8   opportunity for Dr. Ruan to recommit any offense, let alone

9   anything like those alleged in this case.

10:41:48   10              As to general deterrence, if a doctor loses his or

11  her license and is sentenced to even a year prison, that

12  sends a message to doctors.  Most doctors, they don't want to

13  spend any time in prison.

14              When the Court's fashioning a sentence, it's

10:42:00   15  important to consider deterrence, but it's also important to

16  remember that it's a sentence that's sufficient but not more

17  than necessary.  And we submit that, when we're getting up to

18  the 20, 21, that range of sentencing, that becomes more than

19  necessary.  It's unnecessary to send the message to other

10:42:16   20  doctors to think with twice before prescribing.  As

21  mentioned, if a doctor loses a license, a practice, all of

22  his or her assets and has to spend any time in prison, that's

23  the end of their career, and that's means a lot.

24              For Dr. Ruan, he's lost his practice, he's lost his

10:42:34   25  reputation, he's lost his license, he's lost his ability to

practice.  This was something he loved very dearly, and still loves medicine very dearly, and that he will always be -- he will always have to confront.

As the Court is considering these sentencings, we understand the Court's guideline range calculation.  As the Court knows, the Court's not bound by the guidelines.  For that reason, we urge the Court to vary downward and to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of 3553.

A sentence less than seven years, we submit, Your Honor, would do just that.  It would send the message.  It would be a significant sentence.  It would deter specifically and generally.  And we think it would be a just punishment.

And if I could have one moment, Your Honor.

THE COURT:  Sure.

[COUNSEL CONFER]

ATTORNEY DOSS:  One other point, Your Honor.  This morning, I received an email from Dr. Ruan that he would like for me to read to Your Honor, if that's okay.

THE COURT:  That's fine.

ATTORNEY DOSS:  Dear Judge Granade, it has been more than nine years since I was arrested, on May 20, 2015, and about seven years since I was incarcerated, on February 23, 2017.  Words cannot describe the loss, disgrace, humiliation, pain and suffering for me and my family members

and those close to me.  I've lost the most valuable time to
live my life as a normal citizen, enjoy my liberty, and
practice medicine, to which I had dedicated my entire life in
building my identity and reputation as a well-trained,
compassionate, caring interventional pain management
physician.  I miss my career as a physician, my patients,
employees, and colleagues.

During the time of my incarceration, I have lost
four aunts, four uncles, and my parents.

I was arrested at Atlanta airport on May 20, 2015,
on my way to Baltimore to attend my daughter, Jane Ruan's,
graduation from Johns Hopkins, the most important day in
Jane's life, for which Jane has been waiting for years.  She
was supposed to pick me up at the Baltimore International
Airport.  She waited for hours, only to find out later I had
been arrested upon arriving in Atlanta.

Similarly, I missed my daughter, Dorothy Ruan's,
middle school graduation ceremony, as well as her college
graduation ceremony.

In September 2015, my father, a well-known
cardiologist, who had graduated from the same medical school
as I did, suffered aspiration pneumonia, requiring mechanical
ventilation.  He was admitted to the ICU-affiliated hospital,
our medical school.

Months later, after extensive ICU care, he improved

and extubated.  But then repeatedly re-intubated, due to exacerbation.

God was blessing him going through his final years. Everyone knew there was only one reason God wanted him to last this long, more than four years in an ICU bed, to see me for the last time before leaving this world.  I miss my father dearly.

On January 10, 2020, my father finally passed away, unknowing I was serving a 21-year sentence in the USA.

In spring, 2019, my mother, a nursing professor, who had worked as a nursing professor in the same medical school, a dedicated Christian, at 90 years of age and wheel-chair bound, took a journey of traveling from Chongqing, China, to the US, visiting me at Oakdale Federal Prison in Louisiana.  That was the last time I saw my mother. My mother passed away on February 16, 2021.

On that day we woke up to find the land was covered with inches of snow, which seemed a rarity in Louisiana.  In fact, I have never seen snow here in this region, after having lived in the South for more than three decades.  God made it extra special for my mother's departure.  I miss my mother dearly, too.

On September 12, 2016, my granddaughter, Sophie Fo, was born in Atlanta, Georgia.  I was in preparation of my jury trial in Mobile and could not be there with her when she

arrived in this world.  To this day, after close to eight

years, I have never seen Sophie, physically; not once.

I can only pray Your Honor's resentencing of me is

a just one.

10:47:00    Thank you.  Dr. Xiulu Ruan.

Additionally, Your Honor, as you're considering

the entire record, the guidelines range has been lowered

based on where we started back in 2017.  We think that's a

factor for the Court's consideration.

10:47:18    The statutory enhancement for Count 3 is no longer

on the table, despite what it was in 2017.  We think that's a

new factor.

One of the kickback counts was reversed by the

Eleventh Circuit.  That's a new factor for the Court's

10:47:34    consideration.

The substantive 841 counts are no longer on the

table where specific prescriptions were found to be unlawful.

We think that's a new thing for the Court to consider.

As the Court takes into account the entire record,

10:47:50    what was presented at trial, what's been submitted in the

papers, the Court's previous sentencing hearings, we ask the

Court to vary downward from the Sentencing Guidelines and

impose a lesser sentence than it did in 2017.  We

respectfully submit something seven years or less would be

10:48:10    reasonable under these circumstances.

1    And we thank Your Honor for your time today.

2    THE COURT:   All right.

3    And what is the government's position?

4    ATTORNEY BODNAR:  Yes, Your Honor.  As defense

10:48:22   5    counsel noted, there are lots of cases that have lots of

6    various different facts.

7    But the facts of this case you heard over a

8    seven-week period.  Dr. Ruan was the leader of this

9    conspiracy.  As you heard from Dr. Couch, too, and as you

10:48:34   10   heard from witnesses at trial, things were going relatively

11   well at PPSA prior to Dr. Ruan joining.  And evidence we

12   think was overwhelming that the criminality within PPSA began

13   when Dr. Ruan went there, and that he was the main driving

14   force of the fact that the illegal prescriptions were illegal

10:48:56   15   because and then later Dr. Couch were making the decision

16   based on their owner financial self-interest.

17   That was what was so important and why, comparing this to a

18   cash pill mill, is really comparing apples and oranges.

19   The model of criminality here, as you saw, was not

10:49:14   20   getting $300 to hand someone OxyContin.  It was prescribing a

21   patient with insurance, an insurance that would pay, the

22   $10,000 a month or higher fentanyl that was being prescribed

23   and filled by C&R Pharmacy.  Dr. Ruan was the main driver of

24   this.  There was a reason that we asked for significantly

10:49:34   25   more time for him than we did for Dr. Couch.  This Court did

give him one additional year.

We don't think that there is anything that has changed the facts of why he received this 252-month sentence. We do certainly think that he deserves more time than Dr. Couch.  252 months is a downward variance.  It does take into account some of the factors about that you have already considered, and we I think it is a substantive reasonable sentence again.

And then we ask for restitution and forfeiture to be reimposed as previously done.

Yes.  One thing, Your Honor.

ATTORNEY GRAY:  Just one quick clarification on the fentanyl point, which I know came up because I've been reading the opinion.  And I just want to be clear, the Eleventh Circuit upheld that conviction.

The operative paragraph on page 1142 of the *Ruan* decision at pincite 966 F.3rd 1142 is the Court essentially says, and I quote:  While the jury was shown PPMD data throughout the trial, we do not think they were sufficiently presented with the specific data showing that these five patients received 8.83 grams of fentanyl.  But even if the jury erred in finding that over 40 grams was prescribed, the error was harmless because the five-year mandatory minimum sentence was well below the sentence the appellants received. We find no error with the jury's guilty verdict with regard

1   to Count 3.

2          And, just for clarity of the record, the

3   United States is agreeing for the purposes of sentencing that

4   the Court need not consider that point as the defendants have

10:51:04   5   raised.  I just want to be clear that we're not acquiescing

6   to anything that could affect that conviction down the line.

7          THE COURT:  All right.  I understand.

8          ATTORNEY DOSS:  Your Honor, there was one point I

9   meant to include, and I just wanted to make it just to

10:51:16   10   preserve the argument.

11          It appears that -- so Count 1 was the RICO

12   conspiracy.  Counts 2 through 4 were the drug conspiracies.

13   There is a former -- there is an old Eleventh Circuit

14   opinion, *US versus Bolden*, which holds that a drug conspiracy

10:51:34   15   conviction is not a lesser included offense of a RICO

16   conspiracy conviction.  And, therefore, there is no double

17   jeopardy problem there.

18          There was -- after that, however -- a Supreme Court

19   decision of *Rutledge versus the United States*, which

10:51:50   20   concerned different substantive offenses, but found there was

21   a double jeopardy violation.

22          And so, for purposes of just preserving the

23   argument, in case one day down the road the question is

24   raised, we object to the sentencing of Counts 2 and 4 -- 2,

10:52:06   25   3, and 4 as a violation of double-jeopardy insofar as there's

a sentence for Count 1 for the RICO conspiracy.  Again,
acknowledging that the Eleventh Circuit has rejected that
argument.  It hadn't had an opportunity to consider what
later Supreme Court precedent may have done to it.  But we
make the argument to preserve it, Your Honor.

THE COURT:  All right.  I understand.

Well, again, I've considered everything that has
come before today in this case.  I've even reread some of the
transcripts from the original trial, the original sentencing,
the resentencing, the orders that I've entered, and all that
you have presented for me to consider today in arriving at
the appropriate de novo sentencing.

And I am still convinced that the sentence that I
imposed originally in 2017 for both Dr. Couch and Dr. Ruan
were appropriate sentences based upon everything that I have
heard.

And I think I stated at the last sentencing -- not
the last sentencing -- the 2017 sentencing that, even if the
guidelines were calculated incorrectly, I would still find
that to be an appropriate sentence, and that is true also
today.

I will say that it's difficult for me to compare
this case with any of these other doctor cases because most
of those other doctors cases -- or all of them, I am think --
none of them were equal to this case in terms of the breadth

10:54:06

of the criminal activity.  Not just the drug activity but the antikickback, the wire fraud, the mail fraud, the money laundering, and as well as the RICO conspiracy.  So this case is vastly different, I think, than any of these other cases that I've been asked to look at as comparators.

So, therefore, I think, as I said before, that the 252 months is an appropriate sentence for Dr. Ruan, and I intend to reimpose that.

I will now state it but I will allow you to make

10:54:18

legal objections before the actual imposition.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Xiulu Ruan, is hereby committed to the custody of the US Bureau of Prisons to be imprisoned for a term of 252 months.  This term

10:54:36

consists of 240 months to each of Counts 1, 2, 3, 4, and 19; 120 months to as to each of Counts 15, 20, 21, and 22; and 60 months as to Count 17.

All of these sentences are to be served

10:55:02

concurrently with the exception of 12 months on each of the sentences in Counts 15, 20, 21, and 22.  And 12 months out of those 120-month sentences will be consecutive to all of those other concurrent sentences.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years on

10:55:18

each of Counts 1, 2, 4, 15, 17, 19, and 22, and four years on

1    Count 3, all such terms to run concurrently, for a total of

2    four years of supervised release.

3          Within 72 hours of release from the custody of

4    Bureau of Prisons, the defendant shall report in person to

10:55:40    5    the probation office in the district to which he is released.

6          While on supervised release, the defendant shall

7    not commit any federal, state, or local crimes.  He shall be

8    prohibited from possessing a firearm or other dangerous

9    device, and shall not possess a controlled substance.

10:55:56    10          In addition, the defendant shall comply with the

11    standard conditions of supervised release as recommended by

12    the United States Sentencing Commission and that are on

13    record with this Court.

14          It is ordered that the defendant make restitution

10:56:10    15    to the United Health Group in the amount of 1,695,929,

16    jointly and severally with Dr. Couch; to Blue Cross Blue

17    Shield of Alabama in the amount of 4,049,320.37; to the

18    Defense Health Agency, also known as TriCare, in the amount

19    of $3,549,788.40; and also to the Defense Health Agency in

10:56:42    20    the amount of 1,083,273.49, that amount to be joint and

21    several with the defendant Dr. Couch; to Medicare Parts A and

22    B in the amount of $1,365,420.67; to Medicare Part D in the

23    amount of $3,495,638.  All of these victim addresses are on

24    record with the Court.

10:57:08    25          Restitution is due immediately and payable in full

1    and is to be paid through the Clerk, US District Court.

2            Payment to the victims shall be on a pro rata

3    basis.

4            If the full restitution is not immediately paid,

10:57:20    5    any amount owing during the period of incarceration shall be

6    subject to payment through the Bureau of Prisons Inmate

7    Financial Responsibility Program.

8            In the event that program -- this defendant is not

9    eligible for participation in that program, he is ordered to

10:57:34    10    make minimum monthly payments in the amount of $25 while

11    incarcerated.

12            As a special condition of supervised release, the

13    probation office shall pursue collection any of balance

14    remaining at the time of release in installments to commence

10:57:48    15    no later than 30 days after the date of release.  If

16    restitution is to be paid in installments, the Court orders

17    that the defendant make at least minimum monthly payments in

18    the amount of $250.

19            The defendant is ordered to notify the Court of any

10:58:00    20    material change in his ability to pay restitution, and the

21    probation office shall request the Court to amend any payment

22    schedule if appropriate.

23            No interest is to accrue on this debt.

24            The Court orders that the defendant also comply

10:58:14    25    with the following special conditions of supervised release:

1    First is urine surveillance.

2    Second is drug and/or alcohol treatment.

3    Third is a mental health evaluation and any

4    recommended treatment.

10:58:24   5    Fourth is a model search condition.

6    Fifth is the credit restriction until such time as

7    the restitution is paid in full.

8    And sixth is the provision of access to financial

9    information when requested by the probation office.

10:58:38   10    The Court finds that the defendant does not have

11    the ability to pay a fine in addition to restitution; and,

12    therefore, a fine if not imposed.

13    I find the advisory guideline range is not

14    appropriate to the facts and circumstances of this case, and

10:58:50   15    that the sentence imposed is a variance sentence and it

16    provides for a reasonable sentence given the statutory

17    purposes of sentencing.  I sentence at that range because of

18    his absence of criminal history and because I find it to be

19    reasonable given those statutory purposes.  It does address

10:59:10   20    the seriousness of the offense and the sentencing objectives

21    of punishment, deterrence, and incapacitation.

22    It is ordered that the defendant pay a special

23    assessment in the amount of $100 on Counts 1 through 4, 15,

24    17, 19, and 22, for a total of $800, which shall be due

10:59:32   25    immediately.

1          Having stated the sentence I intend to impose, are

2    there specific legal objections to it that have not already

3    been stated?

4          ATTORNEY DOSS:  For the record, Your Honor, we'd

10:59:42    5    renew our prior objections for the record.  We restate them,

6    those stated in our objections to the PSR, as well as the

7    sentencing memorandum, as well as those said today, and as

8    well as those said by Dr. Couch's counsel today.

9          We also object on substantive reasonableness

10:59:56   10    grounds.

11          I may have missed this, Your Honor, but were Counts

12    8, 9, 11 and 12 dismissed?

13          THE COURT:  Not yet, but they will be.

14          And do you have any objections, government?

11:00:08   15          ATTORNEY BODNAR:  Your Honor, we'd just ask that

16    the forfeiture be re-made part of the oral judgment here.

17    And that reiterate all the findings in connection to the

18    conspiracy.

19          THE COURT:  Say that last sentence again.

11:00:22   20          ATTORNEY BODNAR:  Within the forfeiture orders

21    originally, there were findings that they were connected to

22    this case, to the conspiracy.  We'd ask that all of that be

23    reiterated and made part of the final Judgment here, Your

24    Honor.

11:00:34   25          THE COURT:  As to the forfeiture?

1          ATTORNEY BODNAR:  Yes.

2          THE COURT:  All right.

3          That is correct, and it will be made final by

4   virtue of this order.

11:00:44    5          ATTORNEY BODNAR:  And then, Your Honor, we do move

6   to dismiss the remaining counts that have been vacated.

7          THE COURT:  All right.  And they are hereby

8   dismissed.  And that's 8, 9, 11, and 12, I believe.

9          8, 9, 11, and 12.

11:00:58   10          ATTORNEY DOSS:  I think that's right, Your Honor.

11          ATTORNEY BODNAR:  Yes, Your Honor.

12          There are no further objections from the United

13   States.

14          THE COURT:  I hereby impose the sentence as

11:01:04   15   previously stated.

16          Is there anything else I need to address at this

17   point?

18          [COUNSEL CONFER]

19          ATTORNEY GRAY:  Just, Your Honor, as the Court --

11:01:16   20   and I am sure the defense counsel is aware -- but Mr. Ruan

21   obviously has his appellate rights as well.

22          THE COURT:  He does.

23          And I am going to tell him -- although he's not

24   here -- but I'm sure his counsel will relay to him the fact

11:01:30   25   that he does have the right to appeal the sentence imposed

11:01:44

1    today.  And, if he wants to do that, he needs to do that

2    within 14 days of entry of Judgment in this case, and counsel

3    can file that notice for him.

4           ATTORNEY DOSS:  And I will advise Dr. Ruan of

5    that.

6           THE COURT:  Thank you.  This case is adjourned.

7           [PROCEEDINGS CONCLUDED]

8

9

10          OFFICIAL COURT REPORTER'S CERTIFICATE

11

12    I (we) certify that the foregoing is a correct
      transcript of proceedings in the above-entitled matter.

13

14                    /S/ Susan A. Zielie, CVR-CM-S, FCRR
                      Susan A. Zielie, CVR-CM-S, FCRR
15                    August 19, 2024

16

17

18

19

20

21

22

23

24

25